IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                                                PLAINTIFF

v.                               Civil No. 5:22-CV-05218

CHIEF DEPUTY JAY CANTRELL, Washington County Detention Center (WCDC);
MAJOR RANDALL DENZER, WCDC; CAPTAIN NOLAN AKE, WCDC;
CAPTAIN KEVIN EAST, WCDC; LIEUTENANT MIKE ARNOLD, WCDC;
LIEUTENANT AMANDA ARNOLD, WCDC; LIEUTENANT CARRIER; WCDC;
SERGEANT ALLEN, WCDC; SERGEANT PINEDA, WCDC;
SERGEANT MALONE, WCDC; SERGEANT FOSTER, WCDC;
SERGEANT WORKMAN, WCDC; SERGEANT BZOSKI, WCDC;
SERGEANT BEAVERS, WCDC; SERGEANT BRADSHAW, WCDC;
SERGEANT FULLER, WCDC; SERGEANT BYRD, WCDC;
CORPORAL KRADDUCK, WCDC; CORPORAL RAINES, WCDC;
CORPORAL CORLEY, WCDC; CORPORAL BENJAMIN VELASCO, WCDC;
CORPORAL SMITH, WCDC; CORPORAL VANDENACK, WCDC;
CORPORAL BOWMAN, WCDC; CORPORAL GORDON OCHIENG, WCDC;
CORPORAL TURNER, WCDC; CORPORAL DOMINIC NUMZIATO, WCDC;
CORPORAL TOM MULVANEY, WCDC; DEPUTY EOFF, WCDC;
DEPUTY McLELAND, WCDC; DEPUTY DRUMRIGHT, WCDC;
DEPUTY KRISTOPHER MARTINEZ, WCDC; DEPUTY GRANDADOS, WCDC;
DEPUTY RHODES, WCDC; DEPUTY WHITE, WCDC;
DEPUTY DERSAM, WCDC; DEPUTY HIGDON, WCDC;
DEPUTY TYLER BECK, WCDC; DEPUTY SCHMITT, WCDC;
DEPUTY RAINES, WCDC; DEPUTY BILBREY, WCDC;
DEPUTY PHIPPS, WCDC; DEPUTY EDGE, WCDC;
DEPUTY TATE, WCDC; DEPUTY MONTANO, WCDC;
DEPUTY SELF, WCDC; DEPUTY FRYE, WCDC; and
DEPUTY VASILOPOLOUS, WCDC                                                                 DEFENDANTS

**MAGISTRATE'S REPORT AND RECOMMENDATION**

Plaintiff John William Scharnhorst, III, filed this civil rights matter generally alleging that the conditions of his confinement at the Washington County Detention Center ("WCDC") violate his constitutionally protected rights. (ECF No. 1). This matter is now before the Court on

1

Plaintiff's Motion for Preliminary Injunction (ECF No. 7) and Motion for Temporary Restraining Order (ECF No. 9).

## I.     BACKGROUND

In addition to this matter, Plaintiff has pending in this District four (4) additional civil rights actions at various stages. *See Scharnhorst v. Cantrell, et al.*, 5:22-CV-05138-TLB-MEF (W.D. Ark. July 15, 2022); *Scharnhorst v. Helder, et al.*, 5:22-CV-05167-TLB-CDC (W.D. Ark. Aug. 10, 2022); *Scharnhorst v. Cantrell et al.*, 5:22-CV-05176-TLB-CDC (W.D. Ark. Aug. 30. 2022); *Scharnhorst v. Cantrell et al.*, 5:22-CV-05232-TLB-MEF (W.D. Ark. Nov. 28, 2022).

Herein, this Court previously granted Plaintiff's request to proceed *in forma pauperis*. (ECF No. 5). Upon preliminary review of the complaint pursuant to 28 U.S.C. § 1915A(a), Plaintiff was ordered to file an amended complaint to address factual and legal deficiencies in his original complaint. (ECF No. 8). To date, Plaintiff has not submitted the amended complaint for review and for that reason, this Court has not completed its preservice screening obligation under 28 U.S.C. § 1915A(a) to determine whether Plaintiff has plead any cognizable claims. 28 U.S.C. § 1915A(b).

Despite lack of review and lack of service, Plaintiff seeks a preliminary injunction. (ECF No. 7). In his motion, Plaintiff alleges WCDC personnel are "refusing to meet the standards of cleanliness, sanitation, and hygiene required by law and outlined by their own policies." (ECF No. 7 at p. 1). According to Plaintiff, the WCDC policy manual provides that "all inmates have a right to humane treatment which provides for . . . clean living quarters, and a healthy, safe and secure environment," but WCDC staff are violating this policy by refusing to clean – or allow detainees to clean – the facility. *Id.* Plaintiff claims WCDC personnel spread filth around the

2

facility; throw trash onto the floor of the detainee housing areas; deny detainees garbage receptacles; and sweep food and trash out of the detainees' cells and into the common areas, "leaving piles of food, toilet paper, Kleenex, food packaging, spilled drinks, every sort of trash imaginable to be walked through and tracked all over the day room, stairs, and hallways." *Id.* at p. 2. Plaintiff further alleges the facility's failure to appropriately "manage" the mentally ill (detainees) compounds the problem because many of them "soil themselves, urinate all over the floors, spill food on the floors, etc." and "all of this is being swept into the day room and left for all other detainees to contend with." *Id.* Plaintiff says that even though the WCDC policy manual recognizes the public health consequences of failing to maintain a clean facility and requires cleaning supplies to be delivered to detainees three times a day, WCDC staff "refuse to clean or allow to be cleaned the showers, toilet or dining area" and refuse to provide cleaning supplies to Plaintiff despite his requests. *Id.* at pp. 2-3.

Plaintiff seeks an order from this Court requiring WCDC staff to "(1) stop kicking and throwing food trays scattering food and juice all over the detainees' living quarters; (2) stop throwing trash onto the floor, as this is clearly prohibited on page 10 of the WCDC handbook; (3) provide cleaning supplies and allow the detainees to clean the common areas including the dining area, toilet, showers, stairs and catwalk 3 times daily after meals in order to remove food, trash, and spilled juice or clean it themselves, as currently neither is happening; [and] (4) pursuant to WCDC page 10, cleanliness 'detainees shall clean their cells' and 'the facility staff, as required, shall issue cleaning materials,' allow detainees to clean their cells with clean mops and clean brooms . . . ." *Id.* at p. 3.

Plaintiff also seeks injunctive relief in his Motion for Temporary Restraining Order.  (ECF

No. 9). In this motion, Plaintiff similarly alleges that "he and hundreds of other detainees at the Washington County Detention Center are being subjected to inhumane conditions of confinement due to the indifference and neglect of the defendants." (ECF No. 9 at p. 1). Plaintiff repeats that the mentally ill detainees "regularly soil themselves, smear feces on themselves, their bed, the walls, floor and doors, urinate on themselves and the floors, never shower, throw food and drinks around and spread this filth onto the dining tables, telephones, electronic kiosk, door handles, handrails, walls and floors" but the WCDC personnel are not qualified to address their needs, so they are neglected. *Id.*

Plaintiff claims he is currently housed with a detainee who defecates onto food trays and into drinking cups, but these items are not being cleaned thoroughly by kitchen staff before being used at subsequent meals. *Id.* at p. 2. Plaintiff alleges this detainee's cell is cleaned first after meals and Plaintiff is required to use the same mop and broom in his cell, even though neither the mop nor broom are thoroughly cleaned between uses. According to Plaintiff, he has refused meals to avoid these mops and brooms being used on his cell. Plaintiff claims that he recently had a conversation with Captain Ake, who agreed he could use the mop and broom before they are used by the aforementioned detainee. Plaintiff says, however, that this does not address the problem entirely because "no sanitation of the common areas is performed regarding [this inmate] spreading of feces and urine around, and nothing is being done to facilitate his personal hygiene." *Id.* at p. 3. Plaintiff requests a court order requiring the defendants to "address the filth of the mentally ill." *Id.*

## LEGAL STANDARD

Pro se pleadings are to be construed liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Although the Court recognizes that Plaintiff "certified" that he mailed a copy of his Motion for Preliminary Injunction, (ECF No. 7), to Defendants at 1155 W Clydesdale Drive, Fayetteville, Arkansas 72701 – which this Court understands to be the address for the WCDC – Defendants have not yet been served with the Complaint. Accordingly, this Court construes both of Plaintiff's motions for injunctive relief as requests for temporary restraining orders ("TRO") under Rule 65(b)(1) of the Federal Rules of Civil Procedure:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
> Fed. R. Civ. P. 65(b)(1).

In addition to the technical requirements of Rule 65(b)(1), when determining whether to grant a TRO, courts consider the following four factors: (1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) whether the issuance of an injunction is in the public interest.[1]  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); s*ee also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir. 1997); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993).   Court must be mindful that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for

---

[1] Notably, "the standard for analyzing a temporary restraining order is the same as a motion for a preliminary injunction." *Tumey v. Mycroft Al, Inc.* 27 F.4th 657, 665 (8th Cir. 2022) (explaining the material difference between the two is the allowed duration of such an order).

in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotations omitted). "[T]he burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## II. LEGAL ANALYSIS

Plaintiff's motions for injunctive relief are unsound for at least two reasons.

First, "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Here, citing legal and factual deficiencies with his original complaint, this Court directed Plaintiff to file an amended complaint which has not yet been filed. At this stage, Plaintiff has not yet established a cognizable cause of action. "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply eliminate a possibility of a remote future injury, or a future invasion of rights . . . ." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (internal quotations omitted). It exceeds the power of this Court to speculate on whether Plaintiff will, in his amended complaint, establish a viable cause of action sufficient to trigger consideration of temporary relief. *See KCCP Trust v. City of North Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005) (explaining that Article III of the Constitution prohibits federal courts from issuing advisory opinion advising what the "law would be on a hypothetical set of facts"). Given the procedural posture of this case, Plaintiff's motions are subject to dismissal as unripe.

Second, even if the Court considered Plaintiff's motions on the merits, the motions would fail at this stage. While no single *Dataphase* factor is dispositive, "the two most critical factors for

a district court to consider in determining whether to grant a preliminary injunction are (1) the probability that plaintiff will succeed on the merits, and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." *Chicago Stadium Corp. v. Scallen,* 530 F.2d 204, 206 (8th Cir. 1976). While Plaintiff expresses confidence that his action will succeed on the merits, the undersigned cannot agree since it remains to be seen whether Plaintiff (a) will establish a cognizable 42 U.S.C. § 1983 claim alleging a violation of his constitutionally protected rights, and (b) illustrate sufficient facts to suggest a likelihood of success on the merits of his constitutional claim(s). The first *Dataphase* factor weighs heavily against issuance of a TRO.[2]

Similarly, Plaintiff has not illustrated irreparable harm. To establish irreparable harm, "a party must show that the harm is certain and of great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996) (per curiam) (citations omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "Speculative harm does not support a preliminary injunction." *S.J.W. ex rel Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012). While Plaintiff's motions suggest that WCDC personnel have not only violated their cleanliness policies but contributed to the problem, (ECF No. 7), and are ill-equipped to meet the needs of the WCDC's population of mentally ill detainees, (ECF No. 9),

---

[2] With respect to Plaintiff's second TRO motion, (ECF No. 9), a further note is warranted: First, "a party motiving for a preliminary injunction must necessarily establish a relationship between the injury complaint in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Plaintiff's second motion for injunctive relief requests an order concerning the defendants' care of the mentally ill detainees. Such a request is wholly unrelated to factual predicate of the original complaint, which concerns the conditions of confinement at the WCDC. (ECF No. 1). Second, to the extent that Plaintiff is asserting a claim against the WCDC on behalf of the population of mentally ill detainees, such a claim would fail. *See Gold Cross Ambulance v. City of Kansas City*, 705 F.2d 1005, 1016 (8th Cir. 1983) ("A litigant may not claim standing . . . to vindicate the constitutional rights of some third party.") (citing *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)).

7

Plaintiff does not allege he has suffered any concrete harm because of WCDC's failures or that he will suffer irreparable harm absent an injunction. The mere possibility of harm is not enough to satisfy this requirement. *Chlorine Institute, Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015). Failing to illustrate that he will suffer irreparable harm absent an injunction is fatal to Plaintiff's TRO requests.[3] "Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished, and the denial of the injunctive request is warranted." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

### III. CONCLUSION

For these reasons, it is therefore recommended that Plaintiff's Motion for a Preliminary Injunction (ECF No. 7) and Motion for a Temporary Restraining Order (ECF No. 9) be **DENIED.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of December 2022.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff's second request for injunctive relief, moreover, is moot to the extent that it complains of being required to use the same broom and mop that are first used to clean the cell of a mentally ill detainee. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").