IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                        PLAINTIFF


v.                                    Civil No. 5:22-CV-05218-TLB-CDC


CHIEF DEPUTY JAY CANTRELL, Washington County Detention Center (WCDC);
MAJOR RANDALL DENZER, WCDC; CPT. NOLAN AKE, WCDC;
CPT. KEVIN EAST, WCDC; LT. CARRIER; WCDC;
LT. M. ARNOLD; LT. A. ARNOLD; SGT. ALLEN, WCDC; SGT. PINEDA, WCDC;
SGT. BZOSKI, WCDC; SGT. R. FULLER; SGT. BRADSHAW, WCDC;
SGT. WORKMAN; SGT. LUNSFORD; SGT. J. MALONE;
SGT. J.P. BYRD; CPL. SAM CAUDLE; CPL. TOM MULVANEY;
CPL. R. RAINES; CPL. A. RAINES; CPL. CORLEY;
CPL. B. VELASCO; CPL. M. SMITH; CPL. J. VANDENACK;
CPL. E. TATE; CPL. G. OCHIENG;
CPL. C. SELF; CPL. D. NUNZIATO; CPL. K. TURNER;
DFC. H. EOFF; DFC. K. MARTINEZ; DFC. GRANADOS;
DFC. DRUMRIGHT; DFC. JORDAN WHITE; DFC. J. RHODES;
DFC. T. McLELAND; DFC. E. FRYE; DFC. T. BECK;
DFC. HIGDON; DFC. N. SCHMITT; DFC. BILBREY;
DFC. R. PHIPPS; DFC. EDGE; DFC. MONTANO;
DFC. DERSAM; DFC. VASILOPULOS; and
SHERIFF TIM HELDER.                                               DEFENDANTS.


**MAGISTRATE'S REPORT AND RECOMMENDATION**

Plaintiff John William Scharnhorst, III, a prisoner,[1] filed the above-captioned civil rights

---

[1] At the time he filed this action, Plaintiff was a pretrial detainee at the Washington County Detention Center (WCDC) pending state criminal charges. *State v. Scharnhorst*, 72CR-21-1768 (Ark. Cir. Ct. Div. 7) (AOC Public CourtConnect).   He has since been convicted and sentenced on those charges and has been transferred to the Benton County Detention Center (BCDC) pending state criminal charges in that county. *State v. Scharnhorst*, 04CR-23-136 (Ark. Cir. Ct. Div. 2) (AOC Public CourtConnect).

1

action *pro se* pursuant to 42 U.S.C. § 1983. (ECF No. 1).   Pursuant to the provisions of 28 U.S.C.
§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this
case to the undersigned for the purpose of making a Report and Recommendation.   This Court
previously granted Plaintiff's application to proceed *in forma pauperis* (IFP), (ECF No. 5), and
subsequently directed him to submit an amended complaint. (ECF No. 8).

Having received Plaintiff's Amended Complaint, (ECF No. 11), this matter is again before
the Court for preservice review under the provisions of the Prison Litigation Reform Act
("PLRA").   Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint
in which a prisoner seeks redress from a governmental entity or officer or employee of a
governmental entity. 28 U.S.C. § 1915A(a).   Upon that review and for the reasons outlined below,
this Court recommends that the following claims proceed: (1) individual capacity claims against
Sgt. Bzoski and Cpt. Ake for allegedly retaliating against Plaintiff for exercising his First
Amendment rights by placing him in isolation without due process of law in violation of the
Fourteenth Amendment; and (2) conditions-of-confinement claims against the following
defendants in their individual capacity: Cpl. Sam Caudle, Chief Deputy Jay Cantrell, Major
Randall Denzer, Cpt. East, Sgt. Workman, Sgt. Lunsford, Lt. Mike Arnold, Lt. Amanda Arnold,
Lt. Carrier, Sgt. Pineda, Sgt. Byrd, Sgt. Bradshaw, Sgt. Allen, Sgt. Malone, Sgt. Fuller, Cpl. T.
Mulvaney, Cpl. M. Smith, Cpl. B. Velasco, Cpl. Corley, Cpl. Tate, and Cpl. Ochieng.

## BACKGROUND

Plaintiff's Amended Complaint[2] identifies three claims.   First, Plaintiff claims that on

---

[2] The Court considers Plaintiff's Amended Complaint without reference to the original complaint.
*See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that
an amended complaint supersedes the original complaint and renders the original complaint

March 1, 2022, he was discussing with other inmates his satisfaction with the news that then-Washington County Sheriff Tim Helder would not be seeking re-election.   According to Plaintiff, he was telling these inmates that on the same day he had announced that he was running for Washington County sheriff, probable cause to issue a warrant for his arrest was "maliciously manufactured in order to charge [him]" and "prevent him from continuing to expose [Sheriff Helder's] criminal activity." (ECF No. 11 at p. 9).   Plaintiff alleges that Sgt. P. Bzoski overheard this conversation and retaliated against him by ordering Dfc. N. Schmitt to re-house him in "ISO-4." (ECF No. 11 at p. 9).

Plaintiff contends that no one told him initially why he was being moved to ISO-4; he learned only after filing a legal request that he was moved "due to [his] continuous talking with detainees . . . and potentially creating issues . . . ." (ECF No. 11 at p. 9).   Plaintiff contends that when Dfc. N. Schmitt escorted him to ISO-4, he immediately complained about the conditions of the cell because he could see black mold on the walls and "there was all sorts of feces and vomit on the walls, floor, ceiling, in all the corners, on the bunk and around the sink/toilet fixture." (ECF No. 11 at p. 6).   According to Plaintiff, Dfc. N. Schmitt told him that he was following orders and would put him in the cell "with force, if necessary," so Plaintiff voluntarily entered ISO-4. *Id.* Plaintiff contends that he pounded on the door and yelled for assistance because he was not getting any fresh air due to the non-functioning HVAC system. *Id.*   Plaintiff contends that Cpl. A. Raines and Dfc. K. Martinez responded to his requests for assistance only after he covered the security cameras with wet toilet paper. *Id.*   According to Plaintiff, they told him that they would let Sgt. J. Allen know about the conditions of the cell, put in a maintenance request to Cpl. Sam Caudle about

without legal effect.").

the broken HVAC system and leaking fire sprinkler, and inquire about getting the cell cleaned out, but when they later brought him his food tray, they told Plaintiff that moving him to a different cell was "up to Sgt. Allen" but "they had made him aware of the situation." *Id.*   Plaintiff further contends that Cpl. A. Raines and Dfc. K. Martinez "stirred up all the flying insects" in his cell when they brought him his food tray. *Id.*

Despite the assurances of Cpl. A. Raines and Dfc. K. Martinez that they had reported Plaintiff's concerns, Plaintiff claims that from March 1, 2022 – March 5, 2022, "almost nothing changed." *Id.* at p. 7.   According to Plaintiff, he was given a rag at one point, which he used to wipe down the cell, but the primary issues were the non-functioning HVAC system and the large crevice in the floor, which was filled with "feces, vomit, rotting food, dead bugs, live bugs, bug larvae, hair, fingernails, etc." *Id.*   Although Plaintiff says that the guards "occasionally brought him cleaning supplies, consisting of a push broom and wet mop," the broom and mop themselves smelled "like a wet dog" and they did not reach into the corner of the cell. *Id.*   Plaintiff claims that Sgt. P. Bzoski has worked at the WCDC for a long time and was aware of the conditions of ISO-4 when he ordered Plaintiff to be housed there, and he did so "with malicious intent in order to punish [him] for what [he] was saying about Tim Helder, his criminal activities and that of his deputies, and [he] was punished without any due process of law, no hearing, no discussion, nothing."   Plaintiff further claims that Sgt. J. Allen and Cpl. Sam Caudle were "well aware" of the conditions of the ISO cells, as well, but "they keep them in this condition intentionally so that they can use them to torture people." *Id.* at pp. 7-8.

According to Plaintiff, sleeping in ISO-4 was almost impossible because it is located in the center of the pod and so he could hear "the noise of metal doors slamming constantly, guards and

4

trustees hollering at each other just outside the hallway, the screaming and crying and banging on the door of whoever is in the ISO cell [next door], [and] guards open the heavy metal window flap, shine in their high intensity flashlight and then slam the metal window flap closed." *Id.* at p. 8. Plaintiff claims that when he was allowed out of the cell on the second night to take a shower and access the kiosk, he filed a grievance about these conditions. *Id.* Plaintiff contends that Cpl. Mulvaney responded on March 7, 2022, saying that "[he] will have officers check this cell," but nothing got fixed. *Id.*

Plaintiff next claims that he was again placed in an isolation cell from March 29, 2022, to May 24, 2022, in retaliation for speaking out and filing grievances about the facility's poor repair and staff's failure to respect the inmates' constitutional rights. (ECF No. 11 at p. 11). Plaintiff has "no doubt" that then-Sheriff Helder "handed the order [to house him in an isolation cell] to [Chief Deputy] Jay Cantrell and [Major] Randall Denzer and on to [Cpt.] Ake." *Id.* According to Plaintiff, detainees housed in "ISO" cells are reviewed and reconsidered on every shift and there is "typically a rapid turnover." *Id.* Plaintiff says that Cpl. Tom Mulvaney later told him that Lieutenant (now Captain) Nolan Ake first directed him to be placed in ISO and then "Sergeants C. Pineda, J. Byrd, and A. Bradshaw carried out that order on C-shift for two months." *Id.* at p. 12. Plaintiff claims that "he was not given any due process or even told the reasoning behind the move," but Plaintiff believes that he was moved because he was exercising his First Amendment right to freedom of speech and freedom of expression. *Id.* Plaintiff identifies several defendants— including Dfc. Eoff, Dfc. Vasilopulos, Cpt. K. East, Sgt. J. Workman, Sgt. Lunsford, Cpl. M. Smith, Cpl. K. Turner, Cpl. Velasco, Dfc. Beck, Lt. Mike Arnold, Lt. Amanda Arnold, Sgt. J. Allen, Dfc. K. Martinez, Cpl. Ochieng, Cpl. Tate, Sgt. Malone, Sgt. A. Bradshaw, Cpl. Corley,

Dfc. McLeland, Lt. Carrier, Dfc. Phipps, Sgt. Fuller, Dfc. Dersam, Dfc. Drumright, Chief Deputy Jay Cantrell, Major Randall Denzer, and Cpl. Tom Mulvaney—as either issuing orders, overseeing the execution of those orders, or being complicit in keeping Plaintiff locked up in isolation despite being aware of the conditions of those cells. *Id.* at pp. 13-18.   Plaintiff claims that one time Cpl. Sam Caudle, the maintenance manager, came to his cell, and he showed him all the issues, but Cpl. Caudle just left, and nothing was fixed. *Id.*

According to Plaintiff, at 6:00 am on March 30, 2022, the B-shift took over, and Sgts. Carlos Pineda, John Byrd, and Aaron Bradshaw "gave the order as directed by Captain Ake" to keep him in ISO until April 2, 2022. *Id.* at p. 14.   Plaintiff further claims that at 6:00 pm on March 30, 2022, D-shift took over the operation of the jail under the direction of Lt. Mike Arnold, who ordered Sgt. Allen to "instruct [his] corporals and floor guards to keep [him] locked in ISO through Sunday morning April 3rd." *Id.* at pp. 14-15.   Plaintiff alleges that this process continued for approximately two months and all WCDC personnel were aware of the conditions of the ISO cells. During this time, Plaintiff claims that Sgt. J. Allen was "exceptionally sadistic." *Id.*   According to Plaintiff, "[Sgt. Allen] shares [Sgt.] Pineda's joy of tormenting detainees, but differs in that while Pineda takes pleasure in being threatening and intimidating in person, Allen prefers to do it by proxy, vicariously. [Sgt.] Allen not only gave orders to keep [him] locked in ISO, but gave instructions to intensify [his] misery by whatever means possible." *Id.*   Plaintiff alleges that "[Sgt. Allen] sicked [sic] his pit bull Dfc. K. Martinez on [him] to shake [him] down constantly, rough [him] up and threaten [him] repeatedly, leave dirty food trays in [his] cell all night week after week." *Id.*

Plaintiff claims that "[Sgt.] Allen is also sneaky." *Id.* Plaintiff alleges that "when [he]

6

reported [Sgt. Allen] and made requests to [Cpl.] Mulvaney to save video evidence of the Allen/Martinez collaboration, [Sgt.] Allen would dip into [Cpl.] Mulvaney's inbox and close those requests out so that [Cpl.] Mulvaney wouldn't see them and the videos wouldn't get saved." *Id.* at p. 15.   Plaintiff claims that he "took abuse from [Sgt.] Allen week after week.   One of his favorite things to do was to either deprive [him] of his hour out of [his] cell altogether, or have Cpl. Ochieng get [him] out of bed in the middle of the night" after he had finally fallen asleep from exhaustion, but there would be nothing for him to do in the dayroom because by that time the kiosk would have been shut down and he could not file any grievances. *Id.*   Plaintiff alleges that Sgt. Allen also oversees Dfc. Tate, who came to his cell on April 23, 2022, after his toilet had been flushing non-stop for six hours but did not do anything about it, even though he could have turned off the water. *Id.*

According to Plaintiff, Lt. Amanda Arnold took over jail operations at 6:00 am on April 3, 2022, and ordered that he remain in ISO through April 5, 2022. *Id.* at 11.   Plaintiff says that he believes that if it had been up to her, he would have been released but "the standing order came from Tim Helder and nobody had the authority to override his orders." *Id.* at p. 16.   Plaintiff further alleges that Sgt. Malone ordered him to be locked up many times and apologized to him for it. *Id.*   Plaintiff claims that Cpl. Corley ran the control tower operations and ordered guards, including Dfc. Eoff, Dfc. Vasilopolous, Dfc. McLeland, Dfc. Rhodes, and others to keep him locked in ISO. *Id.* at p. 17.   Plaintiff alleges that Lt. Carrier also oversaw B-shift operations on many of the days he was in isolation and Dfc. Phipps told him "over and over that he'd made her aware of the situation." *Id.* at p. 17. When Lt. Carrier met him in his cell, moreover, Plaintiff alleges that he showed her the problems, including the lack of ventilation, bugs, mold, sewage,

and leaking fire sprinkler, and she said she would contact Cpl. Sam Caudle, but nothing was fixed. *Id.*

Plaintiff alleges that Sgt. Fuller gave orders to have him remain in ISO between April 10, 2022, and April 18, 2022, and Dfc. Dersam and Dfc. Drumright verified that Sgt. Fuller was aware of the conditions of his cell. *Id.*   Plaintiff also claims that he mailed letters to Chief Deputy Jay Cantrell and Major Randall Denzer reporting that he was "being housed in ISO with no ventilation, feces and mold on the walls and floor, sewage in the expansion joints, that the cell was toxic and infested with bugs breeding in the vomit and feces, that [he] hadn't had clean stripes, blanket, or towel for weeks, that [he] was being deprived of [his] hour out regularly, or being let out in the middle of the night after the kiosk had been turned off." *Id.* at pp. 17-18.   Plaintiff further claims that he wrote letters to Cpl. Tom Mulvaney detailing the conditions of his confinement.   Plaintiff maintains that the defendants were following then- Sheriff Helder's orders, and no one can claim that they did not know about the conditions of the ISO cell.

Third, Plaintiff claims that during the night of February 27, 2022, Cpl. R. Raines kicked his cell door at fifteen-minute intervals "in order to harass [him] and deprive [him] of sleep." *Id.* at p. 20.   Plaintiff further claims that from March 29, 2022, to May 24, 2022, defendants A. Raines, J. Vandenack, C. Self, D. Nunziato, H. Eoff, K. Martinez, Granados, Drumright, J. White, J. Rhodes, T. McLeland, E. Frye, T. Beck, Higdon, Bilbrey, R. Phipps, Edge, Montano, Dersam, and Vasilopulos "willingly took orders from their superior officers . . . to subject [him] to cruel and unusual punishment by confining [him] to ISO-1 and ISO-4 without due process of law and as retaliation for [him] speaking out about the failures and corruption of Tim Helder and his entire department." *Id.* at p. 20.   Plaintiff claims that each one of the guards "told [him] they'd entered

8

maintenance requests to [Cpl.] Sam Caudle and informed their corporals, sergeants and lieutenants of the conditions of [his] confinement." *Id.* at p. 21.   According to Plaintiff, even though he educated these defendants on the First, Eighth, and Fourteenth Amendments and showed them Ziploc baggies containing the samples he saved of the sewage and detritus, "they all thought it was a big joke." *Id.* at p. 21. Plaintiff claims that "[Dfc.] Drumright, [Dfc.] Dersam, [Dfc.] Eoff, [Dfc.] Frye, [Cpl.] Nunziato, [Dfc.] Beck, [Dfc.] White, and [Dfc.] Martinez mocked [him]." *Id.* Plaintiff further claims that the defendants left food trays in his cell, intensifying the bug problem "despite [him] filing one grievance after another and [Cpl. Tom] Mulvaney telling [him] that he'd save the videos." *Id.*

Plaintiff names the defendants in their official and individual capacities. Plaintiff requests compensatory and punitive damages, an order directing that the ISO cells be cleaned, disinfected, and repaired, an order requiring WCDC policies on housing inmates in ISO cells be amended to comply with the law and standards for humane treatment, and an order installing a third-party detainee advocate at the WCDC. *Id.* at p. 22.

## LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued.   The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In reviewing whether a complaint (or portion thereof) states a claim for which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Varga v. U.S. Nat'l Bank Ass'n*, 764 F.3d 833, 838

9

(8th Cir. 2014).   The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570.   *Pro se* complaints are to be construed liberally, but they must still allege enough facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

## LEGAL ANALYSIS

To establish a § 1983 claim, the complaint must allege that each defendant, acting under color of state law, deprived plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir.1999).

Here, Plaintiff's allegations generally fall into three categories: (1) the defendants retaliated against him for exercising his First Amendment rights by placing him in isolation on two occasions; (2) he was placed in the isolation cells without any due process of law; and (3) the conditions of his confinement in the isolation cells violated his constitutional rights.   Plaintiff also identifies several defendants with respect to each claim.   As set forth below, the Court addresses each claim with respect to every defendant in their individual capacity. The Court then separately addresses Plaintiff's claims against the defendants in their official capacities.

### A.  First Amendment Retaliation Claims

Plaintiff alleges that the defendants retaliated against him by placing him in isolation on two occasions in violation of his constitutional rights.

To establish a First Amendment retaliation claim under § 1983, plaintiff must show: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that

10

would chill a person of ordinary firmness from continuing the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)). "The Supreme Court has made it clear that persons who are incarcerated do not forfeit First Amendment protection of their rights to freedom of speech." *Human Rights Def. Ctr. v. Baxter Cnty. Ark.*, 999 F.3d 1160, 1164 (8th Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). "However, maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.*

### i.    *Claims against Sgt. Bzoski and Cpt. Ake*

Regarding the first factor, Plaintiff alleges that Sgt. Bzoski ordered him to be placed in an ISO cell on March 1, 2022, after he overheard Plaintiff tell other inmates about his intentions to run for sheriff, his dissatisfaction with the current Sheriff and the operation of sheriff's department more generally, and his belief that he is a "political prisoner being held by [then-Sheriff] Tim Helder in order to shut [him] up and prevent [him] from continuing to expose his criminal activity." (ECF No. 11 at p. 9).   Similarly, Plaintiff alleges that in the days leading up to Capt. Ake ordering him to be placed in isolation on March 29, 2022, he filed "grievances against [Chief Deputy] Jay Cantrell for ignoring his letters and grievances [for] continuing to allow the rampant widespread violations of all sorts to continue." (ECF No. 11 at p. 11). Plaintiff also claims that between March 15, 2022 and March 29, 2022, he directed Cpl. Mulvaney to save videos of "every deputy in the department violating mask policy, bare electrical wires hanging out of walls, broken light fixtures, all sorts of security failures including the use of electrical wall plates being used to make knives,

11

metal window flashing to make machetes, several videos of [an inmate] hanging himself from the fire alarm in R block using a noose he made out of a bright yellow extension cord the guards had left strewn across the day room all day." (ECF No. 11 at p. 11).

The United States Court of Appeals for the Eighth Circuit has held that criticism of government officials constitutes protected First Amendment activity. *See Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (concluding that the plaintiffs engaged in "First Amendment protected activity when they criticized the County's enforcement practices"); *Naucke*, 284 F.3d at 927 ("Criticism of public officials lies at the very core of speech protected by the First Amendment."). Accordingly, the Court finds that Plaintiff has established sufficient facts suggesting that he was engaged in a protected activity immediately prior to being placed in isolation on March 1, 2022, and March 29, 2022, respectively.

Second, Plaintiff alleges that he was first placed in isolation for 4 days—from March 1, 2022, to March 5, 2022—and then again for approximately 57 days—from March 29, 2022, to May 24, 2022. Courts have previously held that "placing a pretrial detainee in administrative segregation for 28 days for exercising his First Amendment rights would chill a person of ordinary firmness from engaging in that protected activity." *Sisk v. Pulaski Cnty. Reg. Det. Facility*, No. 4:20-CV-01121-DPM-JTR, 2022 WL 885891, at *3 (E.D. Ark. Feb. 25, 2022), *report and recommendation adopted by Sisk v. Briggs*, No. 4:20-CV-1121-DPM-JTR, 2022 WL 883429 (E.D. March 24, 2022). Thus, for the limited purpose of preservice screening, the Court finds that Plaintiff's allegations that he was placed in isolation for 4 days and 57 days, respectively, satisfies the second factor of the retaliation claim.

Finally, Plaintiff alleges that Sgt. Bzoski and Cpt. Ake ordered him to be placed in isolation because, at least in part, he was engaging in a protected activity. According to Plaintiff, Cpl. Mulvaney admitted as much in his response to Plaintiff's grievance, explaining that "[Sgt.] Bzoski was the one who had moved you to the ISO cell. This was due to your continuous talking with detainees . . . and potentially creating issues . . . ." (ECF No. 11 at p. 9).   Thus, Plaintiff has plead sufficient facts to satisfy the third prong of a retaliation claim. This Court therefore finds that Plaintiff has established a plausible retaliation claim against Sgt. Bzoski and Cpt. Ake.

Plaintiff, however, also identifies several other defendants in connection with his two periods of isolation. The Court turns now to these defendants by examining Plaintiff's allegations regarding each period of isolation: March 1, 2022, to March 5, 2022, and March 29, 2022, to May 24, 2022.

### ii. Period of Isolation from March 1, 2022, to March 5, 2022.

In addition to Sgt. P. Bzoski, Plaintiff identifies Sgt. J. Allen, Cpl. S. Caudle, Cpl. A. Raines, Dfc. N. Schmitt, and Dfc. K. Martinez as defendants to his claims related to his period of isolation from March 1, 2022, to March 5, 2022.

As a preliminary matter, Plaintiff fails to allege any facts suggesting that Cpl. S. Caudle, Cpl. Raines, and Dfc. Martinez were personally involved in any retaliatory conduct.   Accordingly, claims against these defendants—Cpl. S. Caudle, Cpl. A. Raines, and Dfc. Martinez—for retaliation fail as a matter of law. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)

(liability under § 1983 requires a causal connection between the individual's actions and the deprivation of the right).[3]

This leaves defendants Dfc. N. Schmitt and Sgt. Allen. Regarding Dfc. N. Schmitt, Plaintiff alleges that he carried out Sgt. Bzoski's order to transfer him to the isolation cell. (ECF No. 11 at p. 9, 6).   This allegation is simply insufficient to establish § 1983 liability against Dfc. N. Schmitt for purportedly retaliating against him in violation of his First Amendment rights. First, the United States Court of Appeals for the Eighth Circuit has not recognized a "duty to intervene" outside the context of excessive force claims. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012).   Second, and more to the point, Plaintiff has not even established that Dfc. N. Schmitt was aware that Plaintiff was being transferred to an isolation cell in purported retaliation for exercising his constitutional right to free speech. *See Jacobson v. Mott*, Civil No. 07-4420 (DWF/RLE), 2009 WL 113379, at *3 (D. Minn. Jan. 16, 2009) (the "duty to intervene" in excessive force cases only applies when a law enforcement officer witnesses or is aware of a violation of a constitutional right by another officer).   Accordingly, any claims against Dfc. N. Schmitt for retaliating against Plaintiff in violation of Plaintiff's constitutional rights fails as a matter of law.

Finally, Plaintiff claims that when he asked Cpl. A Raines and Dfc. K. Martinez to move him out of the "horrifying conditions" of the isolation cell, he was told that "it was up to Sgt. Allen, that they'd made him aware of the situation but that until further notice, this is where [he would] be staying." (ECF No. 11 at pp. 6-7).   To the extent that Plaintiff asserts that this allegation

---

[3] As the Court understands it, the gravamen of Plaintiff's complaint against these defendants is that they were aware of—but failed to personally correct—the conditions of the ISO cell. (ECF No. 11 at pp. 7-8).   The Court discusses this claim against these defendants below.

establishes the factual predicate for a retaliation claim against Sgt. Allen, such a claim fails as Plaintiff does not allege any facts suggesting that Sgt. Allen failed to move him out of the cell in retaliation for engaging in some protected activity.   To the extent that Plaintiff attempts to establish liability against Sgt. Allen for keeping him in isolation in violation of his due process rights and for the conditions of his confinement in isolation from March 1, 2022, to March 5, 2022, these claims are discussed below.

### iii.        Period of Isolation from March 29, 2022, to May 24, 2022.

With respect to Plaintiff's period of isolation from March 29, 2022, to May 24, 2022, Plaintiff identifies the following defendants: then-Washington County Sheriff Tim Helder, Chief Deputy Jay Cantrell, Major Randall Denzer, Cpt. Nolan Ake, Cpt. Kevin East, Lt. Mariah Carrier, Lt. Mike Arnold, Lt. Amanda Arnold, Sgt. Jacob Allen, Sgt. Carlos Pineda, Sgt. Randall Fuller, Sgt. Aaron Bradshaw, Sgt. Jerry Workman, Sgt. Alan Lunsford, Sgt. Joseph Malone, Sgt. John P. Byrd, Cpl. Tom Mulvaney, Cpl. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Cpl. K. Turner, Dfc. Eoff, Dfc. Vasilopulos, and Cpl. Sam Caudle.

The relevant question here is whether Plaintiff has established a plausible claim against any of these defendants for retaliation.   Plaintiff claims that all the defendants were following the orders of then-Sheriff Helder in placing him isolation and keeping him there for almost two months. (ECF No. 11 at p. 18).   Specifically, Plaintiff alleges that "[c]onsidering my history with Tim Helder there is no doubt he handed the order down to Jay Cantrell and Randall Denzer and on to Ake," (ECF No. 11 at p. 11), and that "Tim Helder, Jay Cantrell, and R. Denzer ordered this two months of cruel and unusual punishment and they did it out of retaliation for my exposing their criminal behavior and for attempting to run for sheriff." (ECF No. 11 at p. 18).   A "supervisor may be held liable under § 1983 if he directly participates in a constitutional violation or if a failure

15

to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 1069, 1078 (8th Cir. 1996) (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994), *cert. denied*, 514 U.S. 1005 (1995)).   Here, Plaintiff asserts that the supervisors in question—then-Sheriff Helder, Chief Deputy Cantrell, and Major Denzer—were directly involved in ordering him placed in isolation.   Plaintiff, however, offers no facts to support this bare assertion.   Such conclusory allegations are not entitled to the presumption of truth at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).   Accordingly, the Court recommends that claims against then-Sheriff Helder, Chief Deputy Cantrell, and Major Denzer for retaliation be dismissed.

Plaintiff further claims that Cpt. Ake ultimately issued the order to place him in isolation on March 29, 2022, and "Sergeants C. Pineda, J. Byrd, and A. Bradshaw carried that order out on C-shift days for two months." (ECF No. 11 at pp. 12).   Further, Sgt. Bradshaw instructed "Dfc. Eoff and Dfc. Vasilopulos to move [him] out of N-block and rehouse him into ISO-1." *Id.* According to Plaintiff, therefore, Sgt. Pineda, Sgt. Byrd, Sgt. Bradshaw, Dfc. Eoff, and Dfc. Vasilopulos were not directly involved in the initial decision to place him in isolation. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation.") (citing *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009)).   Thus, a claim against these defendants for *retaliation* fails as a matter of law.

As the Court understands it, Plaintiff's claims against the remaining defendants—Cpt. East, Lt. Carrier, Lt. M. Arnold, Lt. A. Arnold, Sgt. J. Allen, Sgt. Fuller, Sgt. Workman, Sgt. Lunsford, Sgt. Malone, Sgt. Byrd, Cpl. Mulvaney, Cpl. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G.

Ochieng, Cpl. K. Turner, Cpl. Sam Caudle—allege their purported involvement in continuing to house him in isolation without due process of law and despite their knowledge of the conditions of his confinement.   The Court considers whether Plaintiff has asserted plausible claims alleging due process and conditions-of-confinement violations against these defendants below.   Because Plaintiff does not assert any facts suggesting that they were personally involved in the decision to initially place him in isolation, the Court recommends that any retaliation claim against these defendants be dismissed.

### B.  Fourteenth Amendment Procedural Due Process

Turning to Plaintiff's due process claims, "to set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam). "Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Id.*

Here, Plaintiff claims that he was placed in isolation on two occasions to punish him for exercising his First Amendment right to free speech. "Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "But not every disability imposed during . . . detention amounts to 'punishment' in the constitutional sense." *Id.* "Instead, if a particular condition or restriction of . . . detention is reasonably related to a legitimate government objective, it does not, without more, amount to 'punishment.'" *Hall v. Ramsey Cnty.*, 801 F.3d 912, 919 (8th Cir. 2015) (quoting *Smith*, 87 F.3d at 268)).   At this stage of the proceedings, the Court finds that Plaintiff has established sufficient facts suggesting that his period of isolation—4 days and 57 days, respectively—was not reasonably related to a legitimate government interest.

17

Plaintiff further alleges that despite being placed in isolation, he was not given a hearing or an opportunity to be heard either time. (ECF No. 11 at pp. 7). "The fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).   Accordingly, the Court finds that Plaintiff has established a plausible due process claim.

The question remains, however, whether Plaintiff has identified the appropriate defendants in his due process claims. To answer this question, the Court again reviews Plaintiff's allegations with respect to each period of confinement.

### i.    Period of Isolation from March 1, 2022, to March 5, 2022

As Plaintiff was cautioned in the order directing him to submit an amended complaint, (ECF No. 8), section 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132.   Here, Plaintiff alleges that Sgt. Bzoski ordered him to be placed in isolation on March 1, 2022.   Accordingly, the Court finds that Plaintiff has established a plausible due process claim against Sgt. Bzoski.

Plaintiff also identifies Sgt. J. Allen, Cpl. S. Caudle, Cpl. A Raines, Dfc. N. Schmitt, and Dfc. K. Martinez as defendants with respect to this period of isolation. (ECF No. 11 at p. 5).   As noted elsewhere, the claims against Cpl. S. Caudle, Cpl. A. Raines, Dfc. N. Schmitt, and Dfc. K. Martinez suggest alleged involvement in the conditions of his confinement in isolation.   Because Plaintiff fails to assert any facts suggesting that these defendants were directly responsible for or involved in housing him in isolation without due process, the due process claims against them fail as a matter of law.

18

This leaves Sgt. Allen.    Plaintiff alleges that Cpl. A. Raines and Dfc. K. Martinez told him that it was "up to Sgt. Allen" to move him. (ECF No. 11 at p. 6).    Assumed as true, Plaintiff has established sufficient facts suggesting that Sgt. Allen had authority to remove him from isolation. Plaintiff, however, has not established any facts suggesting that Sgt. Allen was directly responsible or involved in placing him in isolation in the first place.    The Court therefore recommends that claims against Sgt. Allen for violating his due process rights be dismissed.

### ii.        Period of Isolation from March 29, 2022, to May 24, 2022

Plaintiff claims that Cpt. Ake ordered him to be placed in isolation without due process on March 29, 2022. (ECF No. 11 at p. 11).    The Court therefore finds that Plaintiff has established a plausible due process claim against Cpt. Ake in his individual capacity.

According to Plaintiff, "detainees held in ISO are reviewed and reconsidered every shift and there is typically a rapid turnover." (ECF No. 11 at pp. 12).    In addition to Cpt. Ake, Plaintiff alleges that Lieutenant Mike Arnold and Lieutenant Amanda Arnold evaluated and then ordered that he remain housed in an isolation cell. (ECF No. 11 at pp. 14, 16).    He further alleges that Cpt. East "continued giving this order on at least 4/7, 4/24, 4/25, 5/1, 5/2, 5/4, 5/8, 5/11, 5/17, and 5/22." (ECF No. 11 at p. 12).    Finally, Plaintiff contends that "[Lt.] Carrier oversaw B-shift operations on many days over those two months." (ECF No. 11 at p. 17).    Recognizing that all reasonable inferences are to be drawn in Plaintiff's favor at this stage, *see Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016), the Court understands Plaintiff as claiming that Lt. Carrier—like Lt. Mike Arnold and Lt. Amanda Arnold—evaluated his placement in isolation when she took over operations of the jail and ordered that he continue to remain in isolation on her shift.    Here, again, Plaintiff has established sufficient facts suggesting that Lt. Mike Arnold, Lt. Amanda Arnold, and

Lt. Carrier purportedly had the authority, but did not exercise that authority, to move him out of isolation. Yet, Plaintiff has not established that any of these defendants—with the exception of Cpt. Ake—were directly involved in or responsible for placing him in isolation in the first place.

With respect to claims against the supervisory defendants—then-Sheriff Helder, Chief Deputy Cantrell, and Major Denzer—Plaintiff claims that "the standing order [to keep him locked in isolation] came from Tim Helder and nobody had the authority to override his orders." (ECF No. 11 at p. 16). As noted above, he further alleges that "[then-Sheriff] Tim Helder, [Chief Deputy] Jay Cantrell, and [Major] R. Denzer ordered this two months of cruel and unusual punishment and they did it out of retaliation for my exposing their criminal behavior and for attempting to run for sheriff." (ECF No. 11 at p. 18). Plaintiff, however, relies on nothing more than bald allegations to support this claim. "Naked assertions devoid of factual enhancement are insufficient to plead a viable claim for relief." *Twombly*, 550 U.S. at 555-56. Accordingly, the Court recommends dismissal of claims against Lt. Mike Arnold, Lt. Amanda Arnold, Lt. Carrier, then-Sheriff Helder, Chief Deputy Cantrell, and Major Denzer for allegedly violating Plaintiff's due process rights.

The next question is whether Plaintiff has established a due process claim against the remaining defendants—Sgt. Jacob Allen, Sgt. Carlos Pineda, Sgt. Randall Fuller, Sgt. Aaron Bradshaw, Sgt. Jerry Workman, Sgt. Alan Lunsford, Sgt. Joseph Malone, Sgt. John P. Byrd, Cpl. Tom Mulvaney, Cpl. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Cpl. K. Turner, Dfc. Eoff, Dfc. Vasiloulos, Cpl. Sam Caudle—for allegedly executing orders to lock Plaintiff in isolation. (ECF No. 11 at pp. 12-18). Plaintiff does not allege that any of these defendants were directly involved in the decision to place him in isolation, or that they were even aware that he was

placed in isolation without adequate due process.   Accordingly, the Court recommends dismissal of claims against these defendants for allegedly violating his due process rights.

### C.  Conditions of Confinement

Finally, Plaintiff alleges that the conditions of his confinement in isolation violated his constitutional rights.[4]   The Supreme Court has held that the "government may detain defendants pretrial and may subject them to restrictions and conditions of a detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979)).[5]   To determine whether conditions rise to the level of punishment, "[a] plaintiff could show that the conditions were intentionally punitive . . . [a]lternatively, if there is no expressly demonstrated intent to punish, the plaintiff could show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* (cleaned up).   "If conditions are found to be arbitrary or excessive, it is permissible to 'infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id.* (quoting *Bell*, 441 U.S. at 539)).

---

[4] For the purposes of preservice screening only, the Court finds that Plaintiff's conditions-of-confinement claims in this action are not duplicative of those asserted in *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05238-TLB-CDC (W.D. Ark. Dec. 14, 2022), because they specifically concern the conditions of his isolation cells from March 1, 2022—March 5, 2022, and March 29, 2022—May 24, 2022, respectively.

[5] Plaintiff asserts at various points in the Amended Complaint that his conditions of confinement violated his Eighth Amendment right against cruel and unusual punishment. (ECF No. 11 at pp. 6, 12, 14, 17, 21).   As a pretrial detainee, however, the Eighth Circuit has made clear that Plaintiff's conditions of confinement claim is analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *Stearns*, 957 F.3d at 906 (citing *Bell*, 441 U.S. 535 at n.16) ("Due Process requires that a pretrial detainee not be punished. [] [O]n the other hand, an inmate who has been convicted and sentenced *may be punished*, although that punishment may not be 'cruel and unusual' under the Eighth Amendment.").

The Court considers whether Plaintiff has established a plausible conditions-of-confinement claim with respect to both periods of confinement in isolation.

### i. The Period of Isolation from March 1, 2022 – March 5, 2022.

Here, Plaintiff describes the isolation cell he moved into on March 1, 2022, as follows: "[t]he walls were coated in black mold and there was all sorts of feces and vomit on the walls, floor, ceiling, in all the corners, on the bunk and around the sink/toilet fixture." (ECF No. 11 at p. 6). According to Plaintiff, "[t]he ventilation system was not working and the tiny, musty, moldy, filthy, rancid cell got no fresh air." *Id.*

Plaintiff claims that Dfc. N. Schmitt was aware of the conditions, but Schmitt told Plaintiff that he was "just following orders." (ECF No. 11 at p. 6).[6] Plaintiff further claims that when he did not get a response from anyone by pounding on the door and yelling, he threw wet toilet paper on the security camera, which prompted Cpl. A. Raines and Dfc. K. Martinez to respond to his cell. *Id.* According to Plaintiff, they told him that they would tell Sgt. Allen about the conditions of his cell and put in a maintenance order to Cpl. Sam Caudle to address the broken HVAC system and the leaking fire sprinkler. *Id.* Plaintiff asserts that when they brought him his food tray, he asked again to be moved, but he was told that it was "up to" Sgt. Allen, who they had made aware of the situation. *Id.* When he asked about getting fresh air, he was told that "it would be up to

---

[6] Plaintiff also alleges that during this exchange, Dfc. N. Schmitt advised Plaintiff that he would put him in the isolation cell "with force if necessary." (ECF No. 11 at p. 6). To the extent that Plaintiff seeks to attach § 1983 liability against Dfc. N. Schmitt for this comment, such a claim fails as a matter of law. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). Although courts have recognized an exception to this general rule in circumstances where the threat amounts to a "wanton act of cruelty" such that the inmate is in fear of "instant and unexpected death at the whim of his allegedly bigoted custodians," *id.* (quoting *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986)), Plaintiff establishes no facts to suggest that this exception applies here.

Cpl. Sam Caudle, the maintenance manager to get it fixed." *Id.* at p. 7. Plaintiff claims that he filed

a grievance about the conditions of his cell on March 3, 2022, and Corporal Mulvaney responded

on March 7, 2022, saying, "I will have officers check this cell." *Id.* at p. 8.

In considering conditions-of-confinement claims, courts examine the "totality of the

circumstances." *Smith*, 87 F.3d at 268-69. The "length of time a prisoner is subjected to harsh

conditions is a critical factor" in the court's analysis. *Id.* at 269. "Conditions such as a filthy cell

that may be tolerable for a few days are intolerably cruel for weeks or months." *Id.*

Here, Plaintiff was subjected to these conditions of confinement for four days—from

March 1, 2022, to March 5, 2022.   While Plaintiff alleges that "almost nothing changed" in that

period, he concedes that he was "given a rag at one point," which he used to wipe down the cell,

and that the guards would "occasionally bring cleaning supplies." (ECF No. 11 at p. 7).   The Court

recognizes that Plaintiff contends that these efforts were not sufficient to correct the conditions.

*Id.*   However, given the limited time he was exposed to those conditions and the fact that he was

offered cleaning supplies to address them, the Court finds that Plaintiff has failed to establish a

conditions-of-confinement claim from his period of isolation from March 1, 2022, to March 5,

2022.   *See Smith*, 87 F.3d at 269 (Plaintiff's exposure to raw sewage for four days failed to

establish a conditions-of-confinement claim where Plaintiff did not allege that he was exposed to

disease or suffered any other consequence from the exposure, and he was offered cleaning supplies

but declined them).   Further detrimental to Plaintiff's conditions of confinement claim with

respect to this period of isolation is Plaintiff does not establish that he suffered any injury from

these conditions. *Id.*   Accordingly, this Court recommends that Plaintiff's conditions-of-

confinement claim against defendants Sgt. P. Bzoski, Sgt. J. Allen, Cpl. S. Caudle, Cpl. A. Raines,

Dfc. N. Schmitt, and Dfc. K. Martinez regarding his first period of isolation be dismissed for failure to state a claim as a matter of law.

### ii.   *Isolation from March 29, 2022, to May 24, 2022*

Plaintiff's 57-day period of isolation from March 29, 2022, to May 24, 2022, presents an entirely different question.

Here, Plaintiff again describes the isolation cell as "rancid, bug infested, and filthy," "putrid [and] revolting." (ECF No. 11 at p. 12). He references his grievances "complaining about the sewage in the floor, the mold, the bugs, the lack of fresh air due to the non-functioning HVAC system." The Court finds that given the totality of the circumstances, including the fact that Plaintiff alleges that he was exposed to these conditions for approximately 57-days, Plaintiff has established a plausible conditions-of-confinement claim concerning this second period of isolation.

Plaintiff identifies Cpl. Sam Caudle as the maintenance manager charged with maintaining the facility in appropriate repair. (ECF No. 11 at p. 7).   Plaintiff alleges that Cpl. Sam Caudle was aware of the conditions of his confinement—claiming that Cpl. Caudle visited him in his cell and observed first-hand these conditions and that others told him that they had made Cpl. Caudle aware of the issues. (ECF No. 11 at pp. 14, 17).   Accordingly, the Court finds that Plaintiff has established a plausible conditions-of-confinement claim against Cpl. Sam Caudle in his individual capacity.

In addition to Cpl. Sam Caudle, Plaintiff names the following as defendants to this conditions-of-confinement claim: then-Sheriff Tim Helder, Chief Deputy Jay Cantrell, Major Randall Denzer, Cpt. Nolan Ake, Cpt. Kevin East, Lt. Mariah Carrier, Lt. Mike Arnold, Lt.

Amanda Arnold, Sgt. Jacob Allen, Sgt. Carlos Pineda, Sgt. Randall Fuller, Sgt. Aaron Bradshaw, Sgt. Jerry Workman, Sgt. Alan Lunsford, Sgt. Joseph Malone, Sgt. J. P. Byrd, Cpl. Tom Mulvaney, Cpl. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Cpl. K. Turner, Cpl. R. Raines, Cpl. A. Raines, Cpl. Vandenack, Cpl. C. Self, Cpl. D. Nunziato, Dfc. Eoff, Dfc. Martinez, Dfc. Granados, Dfc. Drumright, Dfc. J. White, Dfc. J. Rhodes, Dfc. T. McLeland, Dfc. E. Frye, Dfc. T. Beck, Dfc. Higdon, Dfc. Bilbrey, Dfc. R. Phipps, Dfc. Edge, Dfc. Montano, Dfc. Dersam, and Dfc. Vasicopulos.

The Court addresses claims against these defendants in three distinct groups: (1) then-Sheriff Tim Helder, Chief Deputy Jay Cantrell, Major Randall Denzer, Cpt. Nolan Ake, Cpt. Kevin East, Lt. Mariah Carrier, Lt. Mike Arnold, Lt. Amanda Arnold, Sgt. Jacob Allen, Sgt. Carlos Pineda, Sgt. Randall Fuller, Sgt. Aaron Bradshaw, Sgt. Jerry Workman, Sgt. Alan Lunsford, Sgt. Joseph Malone, and Sgt. J. P. Byrd; (2) Cpl. Tom Mulvaney, Cpl. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Cpl. Tate, and Cpl. K. Turner; and (3) Cpl. R. Raines, Cpl. A. Raines, Cpl. Vandenack, Cpl. C. Self, Cpl. D. Nunziato; Dfc. Eoff, Dfc. Martinez, Dfc. Granados, Dfc. Drumright, Dfc. J. White, Dfc. J. Rhodes, Dfc. T. McLeland, Dfc. E. Frye, Dfc. T. Beck, Dfc. Higdon, Dfc. Bilbrey, Dfc. R. Phipps, Dfc. Edge, Dfc. Montano, Dfc. Dersam, and Dfc. Vasicopulos.

### a. *Sheriff Tim Helder, Chief Deputy Jay Cantrell, Major Randall Denzer, Cpt. Nolan Ake, Cpt. Kevin East, Lt. Mariah Carrier, Lt. Mike Arnold, Lt. Amanda Arnold, Sgt. Jacob Allen, Sgt. Carlos Pineda, Sgt. Randall Fuller, Sgt. Aaron Bradshaw, Sgt. Jerry Workman, Sgt. Alan Lunsford, Sgt. Joseph Malone, Sgt. J. P. Byrd*

As the Court understands it, Plaintiff seeks to attach individual liability to this first group of defendants because of their supervisory roles at the detention center.

25

As noted elsewhere, a supervising officer may be liable for the actions of his subordinates when he: "(1) had notice of a pattern of unconstitutional acts committed by his subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to the plaintiff." *Sturgeon v. Faughn*, 36 F.4th 804, 809 (8th Cir. 2022) (quoting *Livers v. Schneck*, 700 F.3d 340, 355 (8th Cir. 2012) (internal quotation omitted)).   Deliberate indifference "is a subjective standard that entails a level of culpability equal to the criminal definition of recklessness." *Id.* (quoting *S.M. v. Krigbaum*, 808 F.3d 335, 341 (8th Cir. 2015)). The failure to train or supervise the subordinate officer "must reflect a deliberate conscious choice." *Id.* (internal citation omitted). "To be deliberately indifferent, an official must both be aware of facts from which the inference could be drawn that a substantial risk of unconstitutional harm exists, and he must also draw that inference." *Id.* (quoting *S.M.*, 808 F.3d at 341).

### 1.   Then-Washington County Sheriff Tim Helder

Regarding then-Washington County Sheriff Tim Helder, Plaintiff asserts that the other defendants were following Helder's orders. (ECF No. 11 at pp. 16, 18).   As noted elsewhere, Plaintiff offers no facts to support this allegation. *See Twombly*, 550 U.S. at 555-56 (allegations without sufficient factual support are insufficient to establish a claim).   Read broadly, this assertion merely suggests that then-Sheriff Helder knew that Plaintiff was placed in isolation, it does not establish that he was aware of the conditions of isolation.   Although pro se pleadings are to be liberally construed, they must nevertheless contain sufficient facts to support the claims alleged. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).   Accordingly, this Court recommends

that any conditions-of-confinement claim against then-Sheriff Helder in his individual capacity be dismissed for failure to state a claim.

### 2.   Chief Deputy Jay Cantrell and Major Randall Denzer

Plaintiff alleges that on April 20, 2022, he "mailed letters to Chief Deputy Jay Cantrell and Major Randall [Denzer] reporting that [he] was being housed in ISO with no ventilation, feces and mold on the walls and floor, sewage in the expansion joints, that the cell was toxic and infested with bugs breeding in the vomit and feces, that [he] hadn't had clean stripes, blanket or towel for weeks, that [he] was being deprived of [his] hour out regularly, or being let out in the middle of the night after the kiosk had been turned off." (ECF No. 11 at pp. 17-18).

As the Court understands it, Plaintiff is not claiming that Chief Deputy Jay Cantrell or Major Denzer were directly involved in or responsible for his conditions of confinement, but that they were aware of the conditions and failed to intervene.   The Court finds that for the limited purposes of preservice screening, Plaintiff has established that—at the very least—Chief Deputy Jay Cantrell and Major Randall Denzer were aware of the conditions of his confinement in isolation.   Further, because Plaintiff remained in isolation for another month after notifying them of the conditions of his isolation without any significant improvement in those conditions, the Court finds that Plaintiff has established sufficient facts suggesting that they were deliberately indifferent to those conditions.[7]  *See Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (to establish supervisor liability in the section 1983 context, "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see")

---

[7] To be absolutely clear, in finding that Plaintiff has established a *plausible* conditions-of-confinement claim (or *any* claim) pursuant to its review under 28 U.S.C. § 1915A(a), the Court is not remarking on the ultimate *merits* of such a claim.

(quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)).   Accordingly, the Court finds that Plaintiff has established a plausible conditions-of-confinement claim against Chief Deputy Jay Cantrell and Major Randall Denzer in their individual capacities.

### 3.  Cpt. East, Sgt. Workman, and Sgt. Lunsford

Plaintiff seeks to establish liability for the conditions of his confinement in isolation all the way down the chain of command.   Plaintiff alleges (1) "[Cpt.] Kevin East . . . handed down the order to keep [him] in ISO to Jerry Workman who directed the floor guards to do so . . . He fielded a number of [Plaintiff's] grievances complaining about the sewage in the floor, the mold, the bugs, the lack of fresh air due to the non-functional HVAC system." (ECF No. 11 at p. 12); (2) Sgt. Workman "oversaw the floor guards on at least 3/29, 4/12, 4/13, 4/24, 5/1, 5/2, 5/8, 5/15, and 5/16" and "the floor guards verified that Sgt. Workman was made aware of [Plaintiff's] conditions of confinement." *Id.* at pp. 12-13. Sgt. Workman allegedly fielded one of Plaintiff's grievances about the conditions of his isolation, saying the "situation was [Plaintiff's] own doing." *Id.* at p. 13; (3) Sgt. Lunsford took orders from Captain East and directed floor staff to lock him in isolation on "4/4, 4/5, 4/13, 4/14, 4/17, 4/25, 5/7, 5/15, 5/17, 5/21 and likely other dates," knowing about the conditions of the cell because "he was told on numerous occasions by the floor guards that [his] conditions were inhumane." *Id.* at p. 13.

Here, again, for the limited purposes of preservice screening, the Court finds that Plaintiff has established a plausible claim of supervisory liability under the theory of deliberate indifference against these defendants in their individual capacities.

#### 4. Lt. Mike Arnold, Lt. Amanda Arnold, Lt. Carrier

According to Plaintiff, Lt. Mike Arnold took over jail operations on D-shift on March 30, 2022, "reviewed [his] placement" in ISO and ordered that he remain locked in isolation. (ECF No. 11 at p. 14-15).   Plaintiff alleges that this routine continued every week until the end of May. *Id.* at p. 15.   Plaintiff claims that Lt. Mike Arnold has been employed at the Sheriff's Department for years and "knows in intimate detail, the conditions of the ISO cells and has watched (and smelled) for years what detainees endure when being punished by being placed in 'the hole.'" *Id.*

Regarding Lt. Amanda Arnold, Plaintiff claims that she commanded "A-shift" operations at the jail, visited him on at least two occasions over a two-month period while he was in isolation, observed his conditions of confinement, but took no action to correct them. *Id.* at p. 16.

Finally, Plaintiff claims that he showed Lt. Carrier, who commanded "B-shift" operations at the jail, the conditions of his confinement on April 22, 2022. (ECF No. 11 at p. 17).   Although she allegedly reported that she would "call [Cpl.] Sam Caudle," "nothing ever got fixed." *Id.*

Given these allegations, the Court finds that Plaintiff has established a plausible claim against these defendants for being aware of—but deliberately indifferent to—Plaintiff's conditions of confinement.[8]

#### 5. Sgt. Carlos Pineda, Sgt. John Byrd, Sgt. Aaron Bradshaw, Sgt. Jacob Allen

Plaintiff further alleges that Sgt. Carlos Pineda, Sgt. John Byrd, Sgt. Aaron Bradshaw, and Sgt. Allen ordered him to be placed in isolation despite knowing about the conditions of

---

[8] Even though Lt. Carrier allegedly contacted Cpl. Sam Caudle, the "maintenance manager," about Plaintiff's conditions of confinement, it does not appear that Lt. Carrier, who purportedly oversees jail operations and out-ranks a corporal, followed through to determine whether Cpl. Caudle properly addressed the conditions of Plaintiff's cell.

confinement. (ECF No. 11 at pp. 14, 15-16).   In addition, Plaintiff specifically alleges that Sgt. Allen directly contributed to his unconstitutional conditions of confinement by depriving him of an hour out of his cell. (ECF No. 11 at p. 15).   Thus, the Court finds that Plaintiff has established a plausible claim against these defendants in their individual capacities, as well.

Plaintiff's additional claims against Sgt. Pineda and Sgt. Allen warrant further discussion.

First, Plaintiff alleges that "[Sgt.] Pineda takes pleasure in being threatening and intimidating in person." (ECF No. 11 at p. 15). To the extent that Plaintiff attempts to establish a claim against Sgt. Pineda for engaging in purportedly "threatening" or "intimidating" conduct in violation of Plaintiff's constitutional rights, such a claim fails as a matter of law.   Importantly, Plaintiff does not offer any details aside from offering conclusions that Sgt. Pineda engages in threatening and intimidating conduct.   Such conclusory allegations are simply not sufficient to establish a viable cause of action. *Iqbal*, 556 U.S. at 679 (legal conclusions must be supported by factual allegations to establish a plausible claim).   Even if Plaintiff's allegations were sufficient, they do not make out a § 1983 claim as a matter of law. *See, e.g.*, *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment do not establish violation of his constitutional rights); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (verbal threats and name calling are generally not actionable under § 1983).

Regarding Sgt. Allen, Plaintiff alleges that "[he] is exceptionally sadistic. [He] not only gave orders to keep [him] locked in ISO, but gave instructions to intensify [his] misery by whatever means possible. He sicked [sic] his pitbull Dfc. Martinez on [him] to shake [him] down constantly, rough [him] up and threaten [him] repeatedly, leave dirty food trays in [his] cell all night week after week." (ECF No. 11 at p. 15).   Plaintiff does not identify when any of this allegedly

30

happened, or describe how he was "shaken down" or "roughed up," or explain what led him to conclude that Dfc. Martinez was acting at the behest of Sgt. Allen. These bald allegations, therefore, are insufficient to put the defendants on notice of his claims. *See Twombly*, 550 U.S. at 555 (to state a viable claim, the factual allegations must be enough to raise a right to relief about the speculative level).

Plaintiff further alleges that "[Sgt.] Allen is also sneaky. When [Plaintiff] reported him and made requests to Mulvaney to save video evidence of the Allen/Martinez collaboration, Allen would dip into Mulvaney's inbox and close those requests out so that Mulvaney wouldn't see them and the videos wouldn't get saved." (ECF No. 11 at p. 15). Here, again, Plaintiff fails to identify what constitutional right Sgt. Allen allegedly violated, or how even how he came to believe that Sgt. Allen was tampering with Cpl. Mulvaney's inbox. Accordingly, these allegations fail to establish a claim against Sgt. Allen.

Finally, Plaintiff alleges that "one of [Sgt. Allen's] favorite things to do was to either deprive [him] of [his] hour out of [his] cell altogether, or to have Corporal Ochieng get [him] out of bed in the middle of the night once [he'd] finally passed out from exhaustion. Then [he'd] have Ochieng take [him] into the day room of one of the lockdown blocks long after the kiosk had been shut down and leave [him] there miserable and tired with nothing to do . . . ." (ECF No. 11 at p. 15). Here, again, however, Plaintiff fails to establish any facts to suggest how Plaintiff was aware or came to believe that Corporal Ochieng was acting at the behest of Sgt. Allen. *See Twombly*, 556 U.S. at 681 (conclusory allegations are not entitled to the presumption of truth at the pleading stage). Accordingly, as to Sgt. Allen, this claim fails.

### 6.  Sgt. Malone and Sgt. Fuller

Plaintiff describes Sgt. Malone as "a nice enough guy," but claims that Sgt. Malone forced him into those "nasty ISO cells on more than one occasion and he gave others orders to do it on many days including, but not limited to 4/3, 4/23, 4/25, 5/1, 5/7, 5/9, 5/10, and 5/21." (ECF No. 11 at p. 16).  Further, according to Plaintiff, "on May 10th [Sgt.] Malone came into ISO-4, witness[ed] first-hand the filthy, bugs, mold, etc."

Regarding Sgt. Fuller, Plaintiff claims that "he was made aware [of Plaintiff's conditions of confinement] by the reporting by the guards about the feces, mold, bugs and lack of ventilation and fielded [his] complaints on the kiosk system about catching and killing flies, displaying them to the security cameras and the fact that some of the guards were exacerbating the bug problem by leaving dirty food trays in [his] cell all day and night." (ECF No. 11 at p. 17).

Thus, for the limited purposes of preservice screening, the Court finds that Plaintiff has established a plausible "conditions-of-confinement" claim against Sgt. Malone and Sgt. Fuller in their individual capacities.[9]

---

[9] To the extent that Plaintiff alleges a separate conditions-of-confinement claim against Sgt. Malone for "walking [him] into a cloud of pepper spray that several guards had used to subdue [another inmate]" on May 9, 2022, (ECF No. 11 at p. 16), such a claim fails. "[N]ot every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith*, 87 F.3d at 268. "There is a de minimis level of imposition with which the Constitution is not concerned." *Id.* Plaintiff alleges that Sgt. Malone escorted him through a cloud of pepper spray one time; he does not allege that Sgt. Malone lingered, dawdled or otherwise unnecessarily extended Plaintiff's exposure to the pepper spray.  Even if Plaintiff has established that Sgt. Malone deprived him of a constitutional right, *Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989) (concluding that government officials cannot deny basic necessities to persons in custody including "light, heat, ventilation, sanitation, clothing, and a proper diet"), the Court finds that such a deprivation was minimal and did not amount to a constitutional violation.

### 7.  Cpt. Ake

The final defendant in this group is Cpt. Ake.   Contrary to the other supervisory defendants discussed elsewhere, Plaintiff does not allege any facts suggesting that he addressed letters about his conditions of confinement to Cpt. Ake, that Cpt. Ake fielded his grievances about his conditions of confinement, or that other guards reported to him that Cpt. Ake was aware of those conditions. Further, Plaintiff does not allege that Cpt. Ake was directly responsible for maintaining the jail in proper repair.   Accordingly, Plaintiff has not established sufficient facts showing that this defendant was specifically aware of conditions of his confinement. Thus, the Court recommends that any conditions-of-confinement claim against Cpt. Ake be dismissed.

### b.  *Cpl. Tom Mulvaney, Cpl. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Cpl. Tate, Cpl. K. Turner*

### 1.  Cpl. Tom Mulvaney, Cpl. M. Smith, Cpl. B. Velasco, Cpl. Corley

Plaintiff alleges that "Cpl. Michael Smith worked in the control tower directly above ISO-4 and could see straight down into [his] cell. After lights out, [Plaintiff] could see him up there managing the floor guards running B-Pod. He ran the minute by minute affairs of the floor guards and instructed them when to feed [him], take [him] to shower, lock [him] back into the cell, etc." (ECF No. 11 at p. 13).   He further alleges that "Corporal Velasco . . . doles out the play by play orders to the floor guards from the control tower just like Cpl. Smith." (ECF No. 11 at p. 14). Similarly, "Corporal Corley ran the control tower operations on many days including 4/9, 4/12, and 5/3 . . . he sat directly above the ISO cells and had clear view over [Plaintiff] and [his] conditions." (ECF No. 11 at p. 17).

According to Plaintiff, Cpl. Michael Smith was aware of his conditions of confinement because he monitored the closed circuit surveillance system and "saw night after night [Plaintiff]

would hold clear plastic baggies filled with flying insects right up to the camera or sheets of yellow paper date stamped and covered in dead bugs." *Id.*   Plaintiff claims that Sgt. McLeland told him that Cpl. Corley was aware of his conditions of isolation. (ECF No. 11 at p. 17).

Similarly, Plaintiff alleges that Cpl. Mulvaney was aware of the conditions of his confinement because he "read grievances and watched and saved videos of everything described in this complaint day after day." (ECF No. 11 at p. 18). To further support his claim that Cpl. Mulvaney was aware of his conditions of confinement, Plaintiff asserts that he mailed letters to Cpl. Mulvaney on 3/1/22, 4/7/22, and 4/20/22 "detailing the unlawful conditions of confinement." *Id.*

Because Plaintiff alleges that Cpl. Smith, Cpl. Velasco, Cpl. Corley, and Cpl. Mulvaney were aware of the conditions but did not take any action to correct them over a period of almost two months, the Court finds that for the purposes of preservice screening only Plaintiff has established a plausible conditions of confinement claim against these defendants in their individual capacities.

### 2.   Cpl. G. Ochieng and Cpl. Tate

Plaintiff claims that Cpl. G. Ochieng would "get him out of bed in the middle of the night once [he'd] finally passed out from exhaustion." (ECF No. 11 at p. 15). Further, he claims that Cpl. Tate came to his cell on April 23rd "when the toilet had been flushing, non-stop for 6 hours, which sounds like a jet engine in [a person's] ear. He could've turned the water off but he didn't." (ECF No. 11 at p. 16). Plaintiff describes these conditions as punitive. Because a "conditions-of-confinement" claim considers the totality of the circumstances and Plaintiff has alleged facts showing that Cpl. Ochieng and Cpl. Tate directly contributed to those conditions, the Court finds

that Plaintiff has established a plausible conditions of confinement claim against these defendants in their individual capacities.

### 3. Cpl. K. Turner

Regarding Cpl. K. Turner, Plaintiff alleges that Turner came into the cell on April 28, 2022, and Plaintiff showed him that "the ventilation wasn't working, that [he] was infested with bugs, that the cracks and corners of the floor were full of sewage, and that [he] hadn't slept in a month due to the slamming of the control tower door every few minutes, the yelling and screaming and banging on the door by [an inmate] in ISO-2, around the clock noise of the guards and the trustees in the hall, the slamming of all the cell block doors, etc." (ECF No. 11 at pp. 14-15).   In response, Plaintiff alleges that Cpl. Turner told him that he would "talk to Lieutenant East and put in another work order on the HVAC, leaking fire sprinkler, and sewage in the expansion joints of the floor." *Id.* at p. 14.

Although Plaintiff's conditions purportedly did not improve after Cpl. Turner allegedly told him that he would report his concerns to Lt. East and put in a maintenance request, the Court finds that, by taking some action, Cpl. Turner was clearly not "deliberately indifferent" to Plaintiff's conditions. *See S.M.*, 808 F.3d at 341 ("When the issue is qualified immunity from individual liability for failure to train or supervise, deliberate indifference is a subjective standard that 'entails a level of culpability equal to the criminal definition of recklessness.'") (quoting *B.A.B., Jr. v. Bd. of Educ. of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012)).   Further, because Plaintiff does not allege that Cpl. Turner was directly responsible for the repair of the detention center—indeed, Plaintiff alleges repairs were Cpl. Sam Caudle's responsibility—the Court finds

that Plaintiff has not established a plausible conditions-of-confinement claim against Cpl. K. Turner.

### c. *Cpl. A. Raines, Cpl. Vandenack, Cpl. C. Self, Cpl. D. Nunziato, Dfc. Eoff, Dfc. Martinez, Dfc. Granados, Dfc. Drumright, Dfc. J. White, Dfc. J. Rhodes, Dfc. T. McLeland, Dfc. E. Frye, Dfc. T. Beck, Dfc. Higdon, Dfc. Bilbrey, Dfc. R. Phipps, Dfc. Edge, Dfc. Montano, Dfc. Dersam, and Dfc. Vasicopulos.*

The final group of defendants consists of those who Plaintiff alleges either took orders from others and had no supervisory responsibility themselves and/or those who, according to Plaintiff, were personally aware of Plaintiff's conditions of confinement from going about their regular job duties and reported those conditions to their superiors.

For example, Plaintiff alleges that Sgt. Bradshaw ordered Dfc. Eoff to "lock[] [him in the rancid, bug infested filthy ISO cells on 3/29, 4/12, 4/23, 4/24, 5/3, 5/9, 5/23, and possibly other unrecorded dates." (ECF No. 11 at p. 12).  He also alleges that Sgt. Bradshaw ordered "Vasilopulos [to] lock[] [him] into those putrid, revolting cells on at least 3/29, 4/23, 4/25, 5/2 and 5/3." *Id.*.

Further, Plaintiff asserts that "on the following dates each of the guards took on the daily duties of hourly jail checks, delivering [his] meals, and first hand witnessed [his] conditions and then ordered [him] to sit on [his] bunk while they exited the cell and locked the door securing [him] in the conditions [previously described:"

A. Raines 3/1 and 4/29; J. Vandenack 4/21; C. Self 4/10 and 4/12;[10] D. Nunziato, date unrecorded, he and N. [sic] Vandenack did a shakedown of [his] cell in which he took items of 'contraband' from [him] in retaliation for [his] speech;[11] H. Eoff

---

[10] Plaintiff identifies "Dfc. J. Vandenack" as a defendant in the case caption. He identifies no other defendant with the last name "Vandenack," but he sometimes refers to "Dfc. J. Vandenack" as "N. Vandenack." (ECF No. 11 at p. 21). As the Court understands it, this is a typographical error, and "N. Vandenack" is a reference to "J. Vandenack."

[11] To the extent that Plaintiff endeavors to establish a cause of action for retaliation against Dfc. D. Nunziato and Dfc. N. Vandenack, such a claim fails because Plaintiff offers no facts in support

3/29, 4/23, 4/24, 5/3, 5/9, 5/23; K. Martinez 4/14, 4/15, 4/16, 4/17, 4/21, 5/18;[12] Granados 4/14, 4/15, 4/16, 4/17, 4/21, 518; Drumright 4/3, 4/9, 4/10, 4/11, 4/12, 4/23, 4/26, 5/1, 5/2, 5/9, 5/10, 5/11; J. White 4/26, 5/9, 5/10, 5/11; J. Rhodes 4/9, 4/12, 4/23, 4/24, 4/26; T. McLeland 4/3, 4/10, 4/12, 4/23, 4/24, 4/26; E. Frye 3/31, 5/4; T. Beck 3/29, 4/9, 5/19, 5/20; Higdon 5/19; Bilbrey 4/12, 5/11, 5/12; R. Phipps 3/31, 5/11, 5/12; Edge 4/10; Montano 4/24, 5/20, 5/24; Dersam 4/3, 4/10, Vasilopulos 3/29, 4/23, 4/25, 5/2, 5/3.

(ECF No. 11 at p. 21).

According to Plaintiff, "each one of these guards told [him] they'd entered maintenance requests to Sam Caudle and informed their corporals, sergeants and lieutenants of the conditions of [his] confinement." *Id.*

First, Plaintiff has failed to establish that these defendants were directly involved in or responsible for the conditions of his confinement. *S.M.*, 808 F.3d at 340 (because government officials are liable only for their own misconduct, courts must perform an "individualized analysis" of each defendant's conduct to determine whether the defendant is liable for an alleged constitutional violation).   Although Plaintiff alleges that these Defendants were *aware* of his conditions, he concedes that they took action to address it by alerting their supervising officers and the person purportedly in charge of maintaining the facility—Cpl. Sam Caudle—of the problems. *Cf. Villanueva v. George*, 659 F.2d 851, 855 (8th Cir. 1981) (concluding that district court erred in entering direct verdict in favor of correctional officers whose duties included the "day to day

---

of his otherwise purely conclusory allegations. *See Twombly*, 556 U.S. at 681.

[12] Although Plaintiff alleges that Dfc. Martinez would "shake [him] down constantly, rough [him] up, and threaten [him] repeatedly," (ECF No. 11 at p. 15), this allegation does not contain sufficient factual allegations to put the defendants on notice of the claims being alleged: Plaintiff does not specify when this allegedly occurred or how he was "threatened" or "roughed up." *See Iqbal*, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" are insufficient to state a claim under Fed. R. Civ. P. 8).

supervision" of plaintiff because those officers "had knowledge of [plaintiff's] conditions of confinement and nevertheless took no steps to remedy the situation").

Second, law enforcement "are protected from § 1983 suits by the affirmative defense of qualified immunity." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019).   Qualified immunity "shields police officers from lawsuits based on official conduct if reasonable officers in the same position could have believed their conduct was lawful in light of clearly established law and the information the   . . . officers possessed at the time." *Id.* at 734-35 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (internal quotations omitted)). To overcome qualified immunity, "a plaintiff must allege (1) a violation of his statutory or constitutional rights, and (2) that the right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 735 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotations omitted)).   Courts are directed, moreover, to "resolve immunity questions at the earliest possible state in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Because "there is no clearly established law regarding a duty to intervene to prevent constitutional violations" outside the context of excessive force, *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013), even if these defendants violated Plaintiff's constitutional rights by not doing *more* to address his conditions of confinement, they are nevertheless immune from suit. Accordingly, the Court recommends dismissal of the conditions-of-confinement claims against Cpl. A. Raines, Cpl. Vandenack, Cpl. C. Self, Cpl. D. Nunziato, Dfc. Eoff, Dfc. Martinez, Dfc. Granados, Dfc. Drumright, Dfc. J. White, Dfc. J. Rhodes, Dfc. T. McLeland, Dfc. E. Frye, Dfc. T. Beck, Dfc. Higdon, Dfc. Bilbrey, Dfc. R. Phipps, Dfc. Edge, Dfc. Montano, Dfc. Dersam, and Dfc. Vasicopulos.

### d.  Cpl. R. Raines

This leaves Cpl. R. Raines.   Plaintiff claims that "all night long February 27th and into the morning of February 28th Cpl. Robert Raines kicked the door to [his] cell at 15 minute intervals in order to harass [him] and deprive [him] of sleep." (ECF No. 11 at p. 20). Yet, as noted herein, allegations of harassment by prison officials are generally not actionable. *See McDowell v. Jones*, 990 F.3d 422, 434 (8th Cir. 1993) ("Verbal threats and name calling are generally not actionable under § 1983.").   Accordingly, the Court recommends that Plaintiff's claim against Cpl. R. Raines be dismissed.

## D.  Official Capacity Claims

Turning, finally, to Plaintiff's official capacity claims, an official capacity claim is the equivalent to a claim against the official's employer, or, in this case, Washington County, Arkansas. *See Liebe v. Norton*, 157 F.3d 574, 578-79 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).   To prevail on an official capacity claim, the plaintiff must establish that "the constitutional violation has been committed pursuant to an official custom, policy, or practice." *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007).

In support of his claims against the defendants in their official capacities, Plaintiff alleges that "[t]ormenting detainees in one fashion or another, in one degree or another is the guiding principle set forth by Tim Helder, Chief Deputy Jay Cantrell, and Major Denzer and is carried out through their chain of command all the way down to the floor guards." (ECF No. 11 at p. 9).   He further alleges that the Washington County Sheriff's Department violates detainees' constitutional rights every day and it is the culture of that office to do so. *Id.* at p. 19.

Plaintiff clearly takes issue with the operations of the Washington County Sheriff's

Department.   Section 1983 suits against officials in their official capacity, however, are treated as suits against the entity, which, in this case is Washington County itself.[13]  Plaintiff establishes no facts to suggest that the defendants had acted pursuant to an official custom or policy of the *county*. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 & n.55 (1978) (plaintiff seeking to impose liability on county must show official policy or widespread custom or practice of unconstitutional conduct that caused the alleged deprivation.); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) ("[A] governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation.").   Accordingly, this Court recommends that Plaintiff's official capacity claim be dismissed as a matter of law for failure to state a claim.

## CONCLUSION

In sum and for all the reasons outlined above,

**IT IS RECOMMENDED THAT the following claims proceed**:

1. Plaintiff's claim against Sgt. Bzoski in his individual capacity for retaliation in violation of Plaintiff's First Amendment rights.

2. Plaintiff's claim against Cpt. Ake in his individual capacity for retaliation in violation of Plaintiff's First Amendment rights.

3. Plaintiff's claim against Sgt. Bzoski in his individual capacity for ordering Plaintiff to be housed in an isolation cell on March 1, 2022, in violation of the Due Process Clause of the Fourteenth Amendment.

4. Plaintiff's claim against Cpt. Ake in his individual capacity for ordering Plaintiff to be

---

[13] Notably, a county jail is not an entity amenable to suit under § 1983. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (citing *De La Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (unpublished per curiam decision)).

housed in an isolation cell on March 29, 2022, in violation of the Due Process Clause of the Fourteenth Amendment.

5. Plaintiff's conditions-of-confinement claims against the following defendants in their individual capacities for his period of isolation from March 29, 2022, to May 24, 2022: Cpl. Sam Caudle, Chief Deputy Jay Cantrell, Major Randall Denzer, Cpt. East, Sgt. Workman, Sgt. Lunsford, Lt. Mike Arnold, Lt. Amanda Arnold, Lt. Carrier, Sgt. Pineda, Sgt. Byrd, Sgt. Bradshaw, Sgt. Allen, Sgt. Malone, Sgt. Fuller, Cpl. T. Mulvaney, Cpl. M. Smith, Cpl. B. Velasco, Cpl. Corley, Cpl. Tate, and Cpl. Ochieng, **EXCEPT –**

   a. It is recommended that Plaintiff's claim against Sgt. Malone for escorting him through a cloud of pepper spray be DISMISSED WITHOUT PREJUDICE for failure to state a claim. 28 U.S.C. § 1915A(b)(1)

**IT IS FURTHER RECOMMENDED THAT: (1) ALL OFFICIAL CAPACITY CLAIM BE DISMISSED WITHOUT PREJUDICE; AND (2) INDIVIDUAL CAPACITY CLAIMS AGAINST THE FOLLOWING DEFENDANTS BE DISMISSED WITHOUT PREJUDICE:  Washington County Sheriff Tim Helder; Cpl. K. Turner; Cpl. R. Raines; Cpl. A. Rains; Cpl. Vandenack; Cpl. Self; Cpl. Nunziato; Dfc. Eoff; Dfc. Martinez; Dfc. Granados; Dfc. Drumright; Dfc. White; Dfc. Rhodes; Dfc. McLeland; Dfc. Frye; Dfc. Beck; Dfc. Higdon; Dfc. Schmitt; Dfc. Bilbrey; Dfc. Phipps; Dfc. Edge; Dfc. Montano; Dfc. Dersam, Dfc. Vasilopolus. 28 U.S.C. § 1915A(b)(1).**

**The Clerk is directed to strike the above-named defendants from the docket.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of March 2023.

/s/ *Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE