IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JOHN WILLIAM SCHARNHORST, III                                    PLAINTIFF

          v.               Civil No. 5:22-CV-05218-TLB-CDC

CHIEF DEPUTY JAY CANTRELL, Washington County Detention Center (WCDC);
MAJOR RANDALL DENZER, WCDC; CPT. NOLAN AKE, WCDC;
CPT. KEVIN EAST, WCDC; LT. CARRIER; WCDC;
LT. M. ARNOLD; LT. A. ARNOLD; SGT. ALLEN, WCDC; SGT. PINEDA, WCDC;
SGT. BZOSKI, WCDC; SGT. R. FULLER; SGT. BRADSHAW, WCDC;
SGT. WORKMAN; SGT. LUNSFORD; SGT. J. MALONE;
SGT. J.P. BYRD; CPL. SAM CAUDLE; CPL. TOM MULVANEY;
CPL. CORLEY; CPL. B. VELASCO; CPL. M. SMITH;
CPL. E. TATE; and CPL. G. OCHIENG                                DEFENDANTS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff John William Scharnhorst, III, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on Defendants' Motion for Partial Summary Judgment for Failing to Exhaust Administrative Remedies ("Partial Summary Judgment Motion"). (ECF No. 36).  Alongside the Partial Summary Judgment Motion, Defendants filed a memorandum (ECF No. 37), and statement of facts. (ECF No. 38).  Plaintiff has filed a response, (ECF No. 47), and this matter is ripe for consideration.  For the reasons outlined below, the undersigned recommends that Defendants' Motion for Partial Summary Judgment be denied with respect to Defendant Cpl. Tom Mulvaney but granted in all other respects.

**BACKGROUND**

The sole issue before the Court on Defendants' Motion for Summary Judgment is whether the Plaintiff, a prisoner, first exhausted his administrative remedies in accordance with 42 U.S.C. § 1997 before initiating this action. (ECF No. 36).   After preservice review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A(a), claims against the following defendants in their individual capacities remained pending: Chief Deputy J. Cantrell, Maj. R. Denzer, Cpt. N. Ake, Cpt. K. East, Lt. M. Arnold, Lt. A. Arnold, Lt. Carrier, Sgt. Allen, Sgt. Pineda, Sgt. J. Malone, Sgt. Workman, Sgt. Bzoski, Sgt. Bradshaw, Sgt. Fuller, Sgt. Byrd, Cpl. K. Corley, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Cpl. T. Mulvaney, Dpt. E. Tate, Sgt. Lunsford, and Sgt. S. Caudle. (ECF No. 25).   Of those twenty-three, Defendants request summary judgment on the issue of exhaustion as to all but four: Lt. Carrier, Sgt. Allen, Sgt. J. Malone, and Cpl. K. Corley. (ECF No. 36 at ¶¶ 13-15). With respect to these four defendants, the Defendants concede that Plaintiff exhausted his administrative remedies. *Id.*   This report and recommendation, therefore, focuses on the remaining eighteen defendants identified in Plaintiff's Complaint.[1]

This is one of seven actions Plaintiff has initiated in this District. *See Scharnhorst v. Cantrell, et al.*, Case No. 5:22-cv-05138-TLB-CDC (W.D. Ark. July 15, 2022); *Scharnhorst v. Helder et al.*, Case No. 5:22-cv-05167-TLB-CDC (W.D. Ark. Aug. 10, 2022); *Scharnhorst v.*

---

[1] Twenty-three less four is nineteen. However, a close review of the docket reveals that Sgt. Bradshaw was never actually served with a copy of the Amended Complaint.  Accordingly, Bradshaw has neither entered his appearance nor filed a responsive pleading in this matter. Although Defendants discuss Sgt. Bradshaw in their Partial Summary Judgment Motion, *see* (ECF No. 36 at ¶ 18), the Court does not consider whether Plaintiff exhausted his administrative remedies with respect to Bradshaw.   Service as to Sgt. Bradshaw remains outstanding. (ECF Nos. 45 & 50).   He will have an opportunity to bring that motion after he has been served and enters his appearance in this action.

*Cantrell, et al.*, Case No. 5:22-cv-05176-TLB-CDC (W.D. Ark. Aug. 30, 2022); *Scharnhorst v. Cantrell et al.*, Case No. 5:22-cv-05232-TLB-CDC (W.D. Ark. Nov. 28, 2022); *Scharnhorst v. Cantrell et al.*, Case No. 5:22-cv-05238-TLB-CDC (W.D. Dec. 14, 2022); *Scharnhorst v. Ake et al.*, Case No. 5:22-cv-05243-TLB-CDC (W.D. Ark. Dec. 19, 2022).   At all times relevant to this action – as well as the other six – Plaintiff was a pretrial detainee at the Washington County Detention Center (WCDC).[2]   (ECF No. 11).

In this action, Plaintiff alleges that from March 1, 2022, to March 5, 2022, and again from March 29, 2022, to May 24, 2022, Sgt. Bzoski and Cpt. Ake, respectively, placed him in isolation without due process of law in retaliation for exercising his First Amendment rights and that the conditions of that isolation violated his constitutional rights. (ECF No. 11).   As noted, the issue before the Court is whether Plaintiff exhausted his administrative remedies as to these claims before initiating his action.   On this point, the parties disagree.

Defendants assert that WCDC policy allows inmates claiming that they were "subjected to abuse or an abridgement of [their] civil rights while being detained" to file a grievance on the WCDC kiosk in their cellblock. *See* (Statement of Indisputable Facts, Ex. A-5 (ECF No. 38-5)). According to the WCDC Detention Center Handbook, a grievance "must be submitted within eight hours from the time the event complaint of occurred." *Id.*   Further,

The grievance should include:

A. The date and approximate time of the event
B. The name(s) of the person(s) involved

---

[2] Publicly accessible state court records show that Plaintiff has resolved his state court criminal cases. *See, e.g.*, *State of Arkansas v. Scharnhorst*, 72CR-21-1768 (Ark. Cir. Ct. Feb. 15, 2023) (Amend. Sent. Order) (AOC Public Court Connect). He is currently serving a term of imprisonment for those convictions at the Arkansas Division of Correction. *See* Inmate Search, https://apps.ark.org/inmate_info/search.php (last visited July 17, 2023).

    C.  The name(s) of any witness(es)

    D.  Pertinent details of the event.

*Id.*

The WCDC Policies and Procedures Manual, however, differs in that it provides that "[g]rievances must be made within 10 days of the alleged incident unless there is good cause for a reasonable delay. [And] [g]rievances filed more than 30 days following the alleged incident will not be considered." *See* (Statement of Indisputable Facts, Ex. A-3 (ECF No. 38-4)).

In support of their Motion for Partial Summary Judgment, Defendants submitted Plaintiff's kiosk submissions related to his housing in ISO-4 from March 1, 2022, to March 5, 2022, and from March 29, 2022, to May 24, 2022. *See* (Brief in Support at p. 7 (ECF No. 37)).  Defendants contend that none of these submissions qualify as an exhaustion of Plaintiff's administrative remedies with respect to his claims against any of the defendants except – as noted above – for Defendants Cpl. Corley, Sgt. Allen, Lt. Carrier, and Sgt. Malone. *Id.*

Defendants contend that on March 18, 2022, Plaintiff asked for the name of the person who made the decision to have him placed in ISO-4, "a toxic, filthy cell containing human excrement, hair, fingernails, rotting food, leaking plumbing, non-operative HVAC, infested with fruit flies." (Statement of Indisputable Facts, Ex. A-2 at p. 430 (ECF No. 38-3)).[3]  Although there was some back and forth between Plaintiff and Defendant Cpl. Tom Mulvaney in response to this inquiry, no one directly answered Plaintiff's question. *Id.* at pp. 430-431.

On April 1, 2022, Plaintiff again asked, "whose decision it was to have [him] placed in

---

[3] Defendants' Exhibit A-2 is a 102-page document purportedly containing Plaintiff's "grievances" and "requests" from March 1, 2022, to March 5, 2022, and March 29, 2022, to May 24, 2022, related to his confinement in ISO-4. *See generally* Ex. A-2 (ECF No. 38-3).  The parties identify specific grievance using the page numbers located at the center of the bottom of the page.  In keeping with this practice and for the purposes of clarity, this Court does the same.

ISO-4 on or about March 1st." *Id.* at p. 457.   Again, there was some back and forth before Defendant Cpl. Tom Mulvaney finally answered Plaintiff's question on April 13, 2022, saying "Sgt. Bzoski was the one who had you moved to the ISO Cell." *Id.* at p. 458.

Defendants contend that Plaintiff never filed a grievance about Sgt. Bzoski (or anyone else) housing him in ISO-4 on March 1, 2022, without due process and in retaliation for exercising his constitutional rights. (Brief in Support at p. 8 (ECF No. 37) (citing Ex. A-2 at pp. 430-431, 457-458 (ECF No. 38-3))).   Similarly, Defendants assert that although Plaintiff – six months after the fact – requested the identity of the staff who ordered him to be placed in ISO-4 on March 29, 2022, Plaintiff never filed a grievance about Lt. Ake (or anyone else) placing him in ISO-4 on that day without due process and in retaliation for exercising his constitutional rights in accordance with the WCDC grievance policy. *Id.* at p. 8-9 (citing Ex. A-2 at pp. 701, 697, 821, 822 (ECF No. 38-3)).

Defendants further contend that Plaintiff failed to exhaust his administrative remedies regarding Defendants Captain East, Sgt. Workman, Sgt. Lunsford, Lt. Amanda Arnold, Sgt. Bradshaw, Sgt. Fuller, Cpl. Michael Smith, Cpl. Velasco, Cpl. Tate, or Cpl. Ochieng, because Plaintiff failed to file a grievance specifically identifying any of these defendants concerning his conditions of confinement from March 29, 2022, to May 24, 2022. (Brief in Support, at p. 9 (ECF No. 37)).

Although Plaintiff filed a grievance on August 24, 2022, generally expressing his dissatisfaction with Defendant Sam Caudle, Defendants contend that this grievance does not satisfy the Plaintiff's exhaustion requirement as to the claims asserted in *this* action. *Id.* (citing Ex. A-2 at p. 638, 682 (ECF No. 38-3)).

the walls and ceiling. This cell is absolutely toxic and a complete antithesis to the detainee handbook and standards of the WCDC 'To maintain a healthy environment through daily hygiene and sanitation. I was undoubtedly placed here as intentional torture and hopes that I would contract some sort of disease. The trustee apologized to me when I was placed in this cell, he said it smelled like a rotting corpse and that he'd 'done his best to clean it' This classifies as cruel and unusual punishment and *is just another act of torment and retaliation by Tim Helder and his deputies*.

(Ex. A-2, p. 352) (emphasis added).

With respect to Defendant Sgt. Bzoski, Plaintiff asserts that his kiosk submission from

March 18, 2022, should satisfy the exhaustion requirement:

Mulvaney, I would like to know who made the decision to have me placed in ISO-4, a toxic, filthy, cell containing human excrement, hair, fingernails, rotting food, leaking plumbing, non-operative HVAC infested with fruit flies. This cell was well known by the state and the trustee as a health hazard.

(Resp. (ECF No. 48) (citing Ex. A-2, p. 430)). Plaintiff notes his continued efforts to

ascertain the identity of Sgt. Bzoski as the staff who ordered him to be placed in ISO-4

from March 1, 2022, to March 5, 2022. *Id.* (citing Ex. A-2, pp. 431, 451, 458).

Regarding Defendant Cpt. Ake, Plaintiff points to the following kiosk submission

on March 3, 2022:

The ventilation system in ISO-4 is not working and I am getting no fresh air. The fire sprinkler leaks and steadily drips from the ceiling. The expansion joint that crosses the floor is full of human excrement, rotting food, fingernails, mud, hair, etc. and makes the entire room smell liking rotting death. The lack of ventilation and humidity from the leak have caused mold and mildew to accumulate all over the walls and ceiling. This cell is absolutely toxic and a complete antithesis to the detainee handbook and standards of the WCDC 'To maintain a healthy environment through daily hygiene and sanitation. I was undoubtedly placed here as intentional torture and hopes that I would contract some sort of disease. The trustee apologized to me when I was placed in this cell, he said it smelled like a rotting corpse and that he'd 'done his best to clean it' This classifies as cruel and unusual punishment and is just another act of torment and retaliation by Tim Helder and his deputies.

*Id.* (citing Ex. A-2, p. 352).

7

And then, on April 12, 2022, the following kiosk submission:

> This grievance is against, McLeland, Bilbrey, Self, Rhodes, Corley, Drumright, and Dersame, as well as their supervisors for being subjected to Iso-4 which has no ventilation, no working HVAC, is musty and moldy and is swarming with flies nesting and hatching eggs in detritus built up in the expansion joint in the floor. . ..

> *Id.* (citing Ex. A-2, p. 444).

An April 16, 2022, kiosk submission:

> There is no HVAC in ISO-4. It gets no fresh air. Since it doesn't work I covered it with toilet paper to prevent flies from coming in, I suspect that may be where they're nesting and since you've removed the toilet paper I am now collecting flies again . . . I have been reporting the non-functioning HVAC since early March . . . This is an intentional violation of my 8th amendment, purposeful abuse by the sheriff's deputies retaliating against me for exposing Tim Helder and all of them for their crimes and corruption.

> *Id.* (citing Ex. A-2, p. 447).

A separate kiosk submission from April 16, 2022:

> I did not get an hour out yesterday, another intentional abuse by the deputies of the sheriff's deputies as retaliation for exposing their crimes, violations, and corruption.

> *Id.* (citing Ex. A-2, p. 448).

A request to save video from April 12, 2022:

> Mulvaney, please save videos from ISO-4 on 4/10/22 at approximately 3:15PM-4:00PM where I collect flying insects in a clear plastic bag, sometimes from the ceiling by walking on the sink railing, as well as displaying them close to the camera so that you can clearly see the number of flying insects. . .. I intend to use this as evidence in my 1983 lawsuit. Thank you for all of your co-operation in this documentation of violations to policy and my civil rights by Washington County Sheriff's Deputies.

> *Id.* (citing Ex. A-2, p. 461).

A third kiosk submission from April 16, 2022:

> Mulvaney, please note that night shift refuses to provide cleaning supplies to me. Consider this a grievance since I'm at my limit and please save video from the

following times to verify my complaint . . .. This is just another form of abuse that the sheriff's deputies are inflicting upon me for my exposing Tim Helder and them of their crime and corruption.

*Id.* (citing Ex. A-2, p. 463).

A request for video from April 18, 2022:

Mulvaney, please save the following videos that verify that my trays are not being collected and I am not being offered cleaning supplies. . .. My goal is to show a consistent pattern which has persisted for weeks despite my grievances. I am deliberately being denied basic sanitation as a retaliatory response to exposing the corruption and failures of Tim Helder and this entire department.

*Id.* (citing Ex. A-2, p. 465).


From May 5, 2022:

. . . As with all videos I ask you to save I intend to present this video as evidence of the sheriff's deputies continued violation of my civil rights as well as the unofficial custom of the department to engage in such conduct as well as the management's indifferent failure to properly train and supervise with regards to law and legal policies.

*Id.* (citing Ex. A-2, p. 512).

Plaintiff additionally contends he satisfied the exhaustion requirement with respect to Defendants Cpt. East, Sgt. Workman, Sgt. Lunsford, Lt. A. Arnold, Sgt. Bradshaw, Sgt. Fuller, Cpl. Michael Smith, Cpl. Velasco, Cpl. Tate, and Cpl. Ochieng, pointing to the following kiosk submissions: Ex. A-2, pp. 352, 444, 461, 463, 465, 512. *See id.*[5]

Plaintiff then asserts exhaustion of his administrative remedies against Defendant Jay Cantrell when he filed those same submissions – *see id.* (Referencing Ex. A-2, pp. 352, 444, 461, 463, 465, and 512) – along with two additional grievances below.   On March 8, 2022:

This grievance is against Chief Deputy Jay Cantrell for refusing to address my civil rights violations despite my bringing them to his attention in the two letters I've

---

[5] These submissions were recited in whole or in part *supra* and will not be repeated here.

mailed. The deputies under his direction continue to violate my civil rights . . ..

*Id.* (citing Ex. A-2, p. 372).

On March 15, 2022:

> This grievance is against Chief Deputy Jay Cantrell for failing to address my grievances after making him aware via 3 letters over the past several weeks. The guards continue to violate Covid policy, many of the staff continue to retaliate against me for exposing their defiance and unofficial customs of violating detainees' rights, exposing them to unsafe and unhealthy living conditions, and for his allowing the jail staff to continue to subject me to cruel and unusual punishment, most recently denying me medical attention after I've notified them that I feel like I have Covid again . . ..
>
> *Id.* (citing Ex. A-2, p. 379).

With respect to his claims against Defendant Tom Mulvaney, Plaintiff contends that he exhausted his administrative remedies by filing the submissions noted above – *see* Ex. A-2, pp. 352, 444, 461, 463, 465, and 512) – in addition to the following, where, on May 17, 2022, Plaintiff wrote, in part:

> Mulvaney, I would like to address your lame attempt at making the fact that the guards haven't cleaned my cell somehow my fault or responsibility. . .. I would also like to comment on the extreme lengths you go to in order to try and cover up and deflect responsibility for the failure of the guards. You are the quintessential 'dirty cop' who plays along the misdeeds of other officers…. There is a systemic failure by this entire department to respect and uphold the law, you and your guilty conscience know this. You should commit your efforts to proper training of the staff instead of condoning and excusing their failure and defiance.
>
> *Id.* (citing Ex. A-2, p. 520).

Finally, with respect to his claims against Defendant Sam Caudle, Plaintiff asks this Court to "reference the multitude of grievances outlining the condition of ISO-1 and ISO-4." *Id.* Plaintiff further points to the following submission on August 24, 2022, when Plaintiff wrote:

> Sam Caudle needs to be retired. He's useless, apathetic, complacent, arrogant, and

burnt out. The jail is in shambles because he is a complete failure. Many of the guards concur with me, they have stated that there is no point making maintenance requests because nothing ever gets done about them. The faucets don't work, toilets leak, there are roof leaks, mold, insect infestations, the HVAC system is filthy, I could go on and on. Get someone in here who can and will ACTUALLY address maintenance issues.

*Id.* (citing Ex. A-2, p. 639).

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).   In response, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).   In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

## LEGAL ANALYSIS

Plaintiff, a prisoner, filed this action pursuant to 42 U.S.C. § 1983, subjecting his claims to the Prison Litigation Reform Act (PLRA).   Section 1997e(a) of the PLRA "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."

*Booth v. Churner*, 532 U.S. 731, 733 (2001). This requirement is mandatory. *See Chelette v. Harris*, 299 F.3d 684, 687 (8th Cir. 2000).   But "[i]f an inmate fails to exhaust one or more discrete claims raised in the § 1983 complaint, the PLRA requires only that the unexhausted claim or claims be dismissed – it does not require that the complaint be dismissed in its entirety." *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

## I.      Grievance Procedure

Proper exhaustion under Section 1997e(a) "demands compliance with the agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).   "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).   The first question for the Court, then, is to determine what WCDC's grievance procedure requires.   For reasons that remain unclear, WCDC has two.

The WCDC Handbook: Rules and Regulations for Detainees ("Handbook") sets forth the following grievance procedure:

> You are allowed to file a grievance if you feel you have been subjected to abuse or an abridgement of your civil rights while being detained.   All grievances will be done on the kiosk in your cellblock.
> A grievance *must* be submitted within eight hours from the time the event complained of occurred. The grievance should include:
>
> A.  The date and approximate time of the event
> B.  The name(s) of the person(s) involved
> C.  The name(s) of any witness(es)
> D.  Pertinent details of the event
>
> All grievances are reviewed by the Jail Administrator or their designee.   If you feel your grievance was improperly handled, you *may* appeal to the Sergeant

or Lieutenant.

(ECF No. 38-5) (emphasis added).

In their Motion for Partial Summary Judgment, Defendants explain that the WCDC kiosk system allows inmates to enter submissions under various categories, including "grievances" and "requests." *See* (Brief in Supp. at pp. 6-7 (ECF No. 37)). Plaintiff filed submissions under whatever category was available to him, without regard to the nature of the submission. *Id.*; *see also* (Resp. at ¶ 2 (ECF No. 48)).   Notably, there is nothing contained in the Handbook's grievance procedure *requiring* inmates to file a "grievance" under the kiosk's "grievance" category. *See* (ECF No. 38-5). This Handbook is "published on the kiosk for easy access and reference by detainees." (Aff. Cpl. Mulvaney at ¶ 5 (ECF No. 38-1)). Plaintiff does not specifically dispute that this Handbook – and, by extension, the grievance procedure contained therein – was available to him on the kiosk. *See generally* (ECF No. 48).   Thus, for purposes of summary judgment, the Court considers the factual assertion that this Handbook is available to WCDC inmates on the facility's kiosks as undisputed. Fed. R. Civ. P. 56(e)(2).

The second WCDC inmate grievance procedure is outlined in the WCDC Policy and Procedures Manual ("Manual"). (Ex. A3 (ECF No. 38-4)). This Manuel describes the inmate grievance procedure as follows: "[an inmate] grievance *shall* be made by utilizing the kiosk provided in the cell block. Grievances *shall* be made promptly after the incident has occurred . . .. Grievances *must* be made within 10 days of the alleged incident unless there is good cause for reasonable delay. Grievances filed more than 30 days following the alleged incident *will not* be considered." *Id.* (emphasis added). Further, "[t]he grievance *shall* state fully the time, date, location and names of those detention officers and/or staff members involved and pertinent details of the incident, including the names of any witnesses and how the incident personally affected the

detainee." *Id.* (emphasis added).

The primary difference between the grievance procedure set forth in the Handbook and the one described in the Manual is timing.   Pursuant to the Handbook, to be timely, the grievance must be submitted within 8 hours of the incident giving rise to the grievance. (ECF No. 38-5). By contrast, the Manual provides that a grievance must be submitted within 10 days – and no more than 30 days – of the alleged incident. (Ex. A-3 (ECF No. 38-4)).

To determine which grievance procedure controls, this Court turns to the plain language of Section 1997e(a), which requires prisoners to exhaust "such administrative remedies *as are available*." 28 U.S.C. § 1997e(a).   Available means "capable of use for the accomplishment of a purpose: immediately utilizable . . . accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

Although the Handbook's timing requirements are significantly more restrictive than those outlined in the Manual, it is undisputed that the Manual's (and its grievance procedure) is an internal document which is not accessible to detainees. According to the Defendants, the "grievance procedure [described in the Manual] is an internal administrative means for the resolution of complaints and the identification of potentially problematic areas." (Aff. Cpl. Mulvaney at ¶ 7 (ECF No. 38-1)).   This description is consistent with the Plaintiff's assertion that the Manual – and the procedures described therein – was and is not available to detainees. (Resp. at ¶ 1 (ECF No. 48)). Because detainees cannot access this Manual, they cannot use it and therefore, the Manual's grievance procedure is not "available" to detainees within the meaning of Section 1997e(a)'s exhaustion requirement.[6]   Accordingly, this Court considers the grievance

---

[6] The Court notes that on March 28, 2022, Defendant Cpl. Mulvaney responded to one of

procedure described in the Handbook in determining whether Plaintiff properly exhausted his claims, turning now to this task.

## II.    Plaintiff's Claims

### A.    Defendant Bzoski

Plaintiff alleges that Defendant Bzoski housed him in ISO-4 on March 1, 2022, in violation of his due process rights and in retaliation for exercising his First Amendment rights. (Amend. Comp. at p. 4 (ECF No. 11)). Plaintiff has failed to exhaust his administrative remedies as to this claim.

It is undisputed that on March 18, 2022, Plaintiff entered a submission in the kiosk requesting the identity of the staff (later identified as Sgt. Bzoski) who ordered him placed in ISO-4 on March 1, 2022. *See, e.g.*, (Ex. A-2 at p. 430, 431 (ECF No. 38-3)).   That submission, in full, states:

> Mulvaney, I would like to know who made the decision to have me placed in Iso-4, a toxic, filthy cell containing human excrement, hair, fingernails, rotting food, leaking plumbing, non-operative HVAC, infested with fruit flies. This cell was well known by the staff and the trustees as a health hazard.

> (Ex. A-2, p. 430 (ECF No. 38-3)); (ECF No. 48, p. 8).

But this submission does not comply with the WCDC's grievance procedure: it was not submitted

---

Plaintiff's multiple requests for the identity of the staff who ordered him housed in ISO-4 saying, in part, "according to the detainee handbook you have 10 days to file a grievance, and this is well past that time frame." (Ex. A-2, p. 431 (ECF No. 38-3).   Clearly, this is wrong. The Handbook provides that inmates must file the grievance within 8 hours of the incident giving rise to the grievance. (ECF No. 38-5). It is immaterial, however, that Defendant Cpl. Mulvaney told Plaintiff that he had 10 days to file a grievance when the procedure outlined in the Handbook requires grievances to be submitted within 8 hours of the incident giving rise to the grievance because there is no dispute that Handbook's grievance procedure was available to the Plaintiff and there is nothing in the record suggesting that Defendant Cpl. Mulvaney *prevented* Plaintiff from submitting grievances. *See Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (providing plaintiff with incorrect information did not deprive plaintiff of the ability to file a grievance).

within 8 hours of the incident giving rise to the grievance (Plaintiff being housed in ISO-4 in retaliation for exercising his First Amendment rights and without due process of law) and it does not specifically name the individuals involved.

To the extent that Plaintiff asserts that he should be excused from the exhaustion requirement with respect to this claim because the WCDC grievance procedure was "unavailable" to him, the Court finds this argument unavailing.

The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, Plaintiff relies on this third category, claiming that he often did not know the names of the officers involved and that he "was under extreme lockdown conditions, often not given kiosk access for days at a time [and that] the kiosks are often non-operational." (ECF No. 48).

As a threshold matter, this Court previously informed Plaintiff that in responding to Defendants' summary judgment motion, Plaintiff could not rely on mere allegations. (ECF No. 39). Instead, the Court explained that his response must include legal argument, as well as affidavits, prison records, or other evidence establishing a genuine issue of material fact for trial.

16

*Id.* Plaintiff's response, however, does not include any affidavits sworn and subscribed to by a notary public or executed under penalty of perjury pursuant to 28 U.S.C. § 1746. Thus, the Court considers Plaintiff's verified amended complaint, (ECF No. 11), to determine whether there are any material fact disputes for trial. *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (concluding that plaintiff's second amended complaint is the equivalent to an affidavit and can serve as plaintiff's response to defendants' summary judgment motion because it was verified under penalty of perjury) (citing *Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984)). To the extent that Plaintiff's arguments and objections to Defendants' Motion include factual assertions – including his claims regarding his limited access to the kiosks – the undersigned finds these assertions unsupported. *See* Fed. R. Civ. P. 56(c).

To be sure, Plaintiff's submission clearly illustrates that he was trying to ascertain the identity of the staff member who placed him in ISO-4 on March 1, 2022. It is also abundantly clear that WCDC staff avoided providing Plaintiff with the requested information. *See, e.g.*, (Ex. A-2, pp. 430, 431, 457, 458 (ECF No. 38-3)). If Plaintiff's submission had otherwise complied with WCDC's grievance procedure, this Court would likely find that WCDC's behavior in refusing to answer Plaintiff's question excused Plaintiff from identifying implicated staff members by name as required by that procedure. But Plaintiff's submission does not otherwise comply with the WCDC grievance procedure.

First, it was submitted seventeen days after he was first placed in ISO-4 and approximately thirteen days after he was transferred out of ISO-4. (Ex. A-2, p. 430 (ECF No. 38-3)). This is well outside the Handbook's policy requiring inmates to submit a grievance within 8 hours of the incident that is the subject of the grievance. (ECF No. 38-5). Second, setting aside timing for the

moment, a careful review of this submission reveals that while Plaintiff certainly grieved the condition of ISO-4 cell, there is nothing to indicate that he grieved being placed into that cell in retaliation and/or without due process of law in violation of his constitutional rights.

Finally, even if Plaintiff submitted factual support for his assertions that the grievance procedure was not "available" to him because he was under "extreme lockdown conditions" with limited access to the kiosk, *see* (ECF No. 48), Plaintiff's kiosk submissions belie this argument. Plaintiff's response includes a kiosk submission from March 3, 2022, two days after he was placed in ISO-4, related to the conditions of ISO-4. (ECF No. 48, at p. 5). In his verified Amended Complaint, Plaintiff explains that "on the second night when [he] was taken out [of his cell] to shower and access the kiosk, [he] filed this grievance." (Amend. Comp. at p. 8 (ECF No. 11)). Plaintiff also entered a kiosk submission on March 8, 2022, three days after being released from ISO-4, related to "Chief Deputy Jay Cantrell [] refusing to address [his] civil rights violations despite [him] bringing them to his attention in the two letters [he] mailed." (Ex. A-2, p. 372 (ECF No. 38-3). Accordingly, even if the Court construed Plaintiff's March 18, 2022, submission as a grievance about why he was placed in ISO-4 (which it does not), to the extent Plaintiff contends limited kiosk access prevented him from timely filing, the facts belie Plaintiff's argument. Plaintiff's claims against Sgt. Bzoski should be dismissed for failure to first exhaust his administrative remedies.

### B.   Captain Ake

Similarly, although Plaintiff claims that Cpt. Ake placed him in ISO-4 on March 29, 2022, in retaliation and without due process of law in violation of his constitutional rights, (Amend. Compl. at p. 11 (ECF No. 11)), this claim should fail because Plaintiff did not first exhaust his

administrative remedies in accordance with the Handbook's grievance policy.

Indeed, the record shows that he did not ever file a submission about this particular claim. While Plaintiff certainly filed kiosk submissions concerning the *conditions* of that cell, *see, e.g.*, (Ex. A-2, at pp. 444, 445, 452, 466, 489, 491, 493, 500, 501 (ECF No. 38-3)), none of his submissions presented to the Court suggest that he filed a grievance specifically pertaining to the reasons why he was placed in ISO-4 on March 29, 2022, in the first place.

The Court recognizes that WCDC personnel again did not immediately respond to his request for the name of staff who ordered him housed in ISO-4 on March 29, 2022, *see* (Ex. A-2, at p. 697 (ECF No. 38-2), but Plaintiff he did not make this request until September 21, 2022, almost six months after the fact and well outside the 8-hour timeframe the WCDC grievance policy requires. Further, to the extent that Plaintiff claims that the WCDC grievance procedure was not "available" to him while he was housed in ISO-4 because he "was under extreme lockdown conditions, often not given kiosk access for days at a time, [and] the kiosks are often non-operational," Plaintiff's prolific use of WCDC's kiosk system – as reflected in Exhibit A-2, ECF No. 38-3 – directly undercuts this argument. For example, on March 28, 2022, the day before Plaintiff was placed in ISO-4 for the second time in as many months, Plaintiff filed a submission requesting that Defendant Mulvaney save video showing "[his] horsey ride around the day room . . . [and] showing [him] jump rope and play[] cattle rustler lasso with [his] 10 foot length of electrical wire." (Ex. A-2 at p. 455, ECF No. 38-3). Defendant Tom Mulvaney responded to this submission on March 29, 2022; and on April 1, 2022, Plaintiff replied, saying, "[P]lease close." *Id.* That same day, he requested the name of the staff who ordered him placed in ISO-4 on March 1, 2022. *Id.* at p. 457. And, again on April 1, 2022, he put in a third submission, requesting that

Defendant Tom Mulvaney save video from March 29, 2022, purportedly showing "[O]fficer Eoff strik[ing] [him] in the back with his shoulder and elbow." *Id.* at 459. Clearly, the kiosk system was available to Plaintiff within days of him being placed in ISO-4 on March 29, 2022.   The undisputed facts illustrate that when Plaintiff had access to the kiosk, he did not use to it grieve the basis for him being placed in ISO-4.   Accordingly, with respect to his claim against Captain Ake, Plaintiff failed to first exhaust his administrative remedies in accordance with WCDC policies with respect to this claim.   The claim should therefore be dismissed on that basis.

### C.   Defendant Sam Caudle

Plaintiff's Amended Complaint asserts claims against Cpl. Sam Caudle for failure to properly maintain the WCDC. (Amend. Comp. at pp. 6, 14, (ECF No. 11)). This action specifically concerns the time Plaintiff was housed in ISO-4:   March 1, 2022—March 5, 2022, and March 29, 2022, through May 24, 2022. *Id.*   Nevertheless, Plaintiff's kiosk submissions show that he did not file a submission naming this Defendant until August 24, 2022. (Ex. A-2, p. 639 (ECF No. 38-3)). That submission provides, in full:

> Sam Caudle needs to be retired. He's useless, apathetic, complacent, arrogant, and burnt out. The jail is in shambles because he is a complete failure. Many of the guards concur with me, they have stated that there is no point making maintenance requests because nothing ever gets done about them. The faucets don't work, toilets leak, there are roof leaks, mold, insect infestations, the HVAC system is filthy. I could go on and on. Get someone in here who can and will ACTUALLY address some maintenance issues.
> *Id.*

Plaintiff filed another submission on September 15, 2022, saying, in part, "as everyone knows, Caudle rarely fixes anything, that's why the jail is in such miserable disrepair . . .." (Ex. A-2, p. 682 (ECF No. 38-3)). And Plaintiff filed a subsequent submission against this Defendant on November 30, 2022, providing, in part, "[t]his grievance is against Cpl Caudle, Sgt. Pineda, Sgt

20

Byrd, Lt. M. Arnold, Captain Ake, Major Denzer and Sheriff Elect Jay Cantrell. Let this serve as final exhaustion of the grievance process prior to filing a lawsuit. I have been reporting for a year on the filth of the jail and the staff's refusal to provide a clean, safe, and healthy environment through daily practices of sanitation and hygiene." (Ex. A-2, p. 918 (ECF No. 38-3)).

This Court need not address Defendants' assertion that the August 24, 2022, and September 15, 2022, kiosk submissions are merely expression of Plaintiff's "disapproval" of Defendant Caudle and "insufficient to exhaust administrative remedies as to [this defendant] regarding the claims identified in this case." (Part. Mtn. Summ. J. at ¶ 19 (ECF No. 36)).   Instead, the Court finds that Plaintiff has failed to satisfy the WCDC's administrative procedure with respect to Defendant Caudle on the basis of timeliness.   It is undisputed that Plaintiff did not file a submission specifically naming Sam Caudle for his failure to properly maintain the jail (and thereby contributing to Plaintiff's conditions of confinement) until August 24, 2022, more than three months after he was moved out of ISO-4 for the second time and well outside the window for filing a grievance as required by the WCDC procedure.   When reaching this conclusion, the Court notes Plaintiff fails to provide any facts that the WCDC grievance procedure was "unavailable" to him or that he was otherwise prohibited from accessing that procedure. Plaintiff's claims against Defendant Sam Caudle should therefore be dismissed for failure to properly exhaust the WCDC's grievance procedures.

### D.   Defendant Tom Mulvaney

Plaintiff's claims against Defendant Tom Mulvaney in this particular action concern the conditions of Plaintiff's confinement when he was in ISO-4 from March 29, 2022, to May 24, 2022. (ECF No. 11). Plaintiff's kiosk submissions include numerous directives to Defendant

Mulvaney to preserve video, *see* (Ex. A-2, pp. 455, 459, 461 (ECF No. 38-3), and requests for

information from Defendant Mulvaney, including the names of staff who ordered Plaintiff placed

in ISO-4, *see, e,g. id.* at pp. 457. But the submissions specifically advise Mulvaney of the alleged

conditions of Plaintiff's confinement during that time.   For example, on April 16, 2022, Plaintiff

entered a submission saying, in part,

> Mulvaney, please note that the night shift refuses to provide cleaning supplies to
> me. Consider this a grievance since I'm at my limit.

> (Ex. A-2, pp. 463 (ECF No. 38-3)).

On April 18, 2022, Plaintiff entered the following submission:

> Mulvaney, please save the following videos that verify that my trays are not being
> collected and I am not being offered cleaning supplies.

> *Id.* at p. 465.

On April 18, 2022, Plaintiff entered another submission saying:

> Mulvaney, please save video from today 4/18 at approximately 3:00 PM Showing
> me collecting flies and displaying them to the camera. Note that there is still no
> ventilation in ISO-4 And it is causing, mold mildew and flies. I am intentionally
> being subjected to these conditions as retaliation by this entire department.

> *Id.* at p. 466.

And on April 25, 2022, Plaintiff entered a submission saying:

> Mulvaney, please save vide from ISO-4 at approximately 9:00 PM on April 24 at
> lights out and approximately 6:30 AM April 25 showing the food tray next to the
> toilet, nigh shift once again refuses to clean, provide cleaning supplies, or collect
> my food tray after dinner.

> *Id.* at p. 469.

These examples constitute a non-exhaustive list of the Plaintiff's kiosk submissions specifically

naming Defendant Mulvaney and highlighting for him the conditions of Plaintiff's confinement

and the purported failures of the WCDC staff to address those conditions.   Moreover, Plaintiff

enters a submission against Defendant Mulvaney on May 17, 2022, describing his purported inadequacies. *Id.* at p. 520.

Plaintiff contends that this grievance details Defendant Mulvaney's "complicity" in failing to address and rectify his substandard conditions of confinement. (ECF No. 48). By contrast, Defendants assert that Plaintiff's kiosk submissions implicating Defendant Mulvaney do not "nam[e] [him] as a person of responsibility for the alleged unconstitutional conditions." (Partial Mtn. for Summ. J. at ¶ 21 (ECF No. 36)).   Further, Defendants argue that "[e]ven if the Court were to consider Cpl. Mulvaney's communication with Plaintiff on the issues sufficient to exhaust remedies as to Mulvaney, the same does not impute liability." *Id.*

At summary judgment, the Court views the record in the light most favorable to the nonmoving party. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). Accordingly, viewed in the light most favorable to Plaintiff, the Court determines that Plaintiff's grievances naming Defendant Mulvaney satisfy the WCDC's grievance procedure. The question of whether Defendant Mulvaney is entitled to summary judgment on the merits is a question for another day. This Court therefore recommends that Defendant's Motion for Summary Judgment as to Defendant Mulvaney for failure to exhaust administrative remedies be **denied**.

### E.    Remaining Defendants

This leaves the Defendants' claim that Plaintiff failed to exhaust his administrative remedies as to the remaining defendants: Defendants Chief Deputy Jay Cantrell, Major Randall Denzer, Cpt. East, Sgt. Workman, Sgt. Lunsford, Lt. Mike Arnold, Lt. Amanda Arnold, Sgt. Pineda, Sgt. Byrd, Sgt. Fuller, Cpl. M. Smith, Cpl. B. Velasco, Cpl. Tate, and Cpl. Ochieng.   This Court agrees.

There is no dispute that Plaintiff filed multiple kiosk submissions complaining about the

conditions of ISO-4 while he was housed in that cell from March 29, 2022, to May 24, 2022.   On April 12, 2022, for example, Plaintiff complained that ISO-4 "had no ventilation, no working HVAC, is musty and moldy and is swarming with flies nesting and hatching eggs in the detritus built up in the expansion joint in the floor. . .." (Ex. A-2, at p. 444 (ECF No. 38-3).   On that same day, Plaintiff filed a submission requesting that Defendant Mulvaney save videos "where [he] collect[s] flying insects in a clear plastic bag . . .." *Id.* at p. 451. On April 14, 2022, Plaintiff again complained that "there is no HVAC/ventilation in ISO-4. . .." *Id.* at p. 445.

Moreover, Plaintiff filed these submissions while he was experiencing these alleged conditions of confinement, satisfying the WCDC grievance procedure's timing requirement.   The question, then, is whether Plaintiff satisfied the WCDC's grievance procedure in all other respects as to these defendants, specifically at issue here is whether Plaintiff included the "name(s) of the person(s) involved" in accordance with that policy. *See* (ECF No. 38-5).

Plaintiff argues this Court should find that he satisfied – or should be excused from satisfying – this aspect of the grievance procedure because he filed submissions against "Tim Helder and his deputies," *see* (Ex. A-2, at p. 444 (ECF No. 38-3)); (Resp. at p. 5 (ECF No. 48) (citing Ex. A-2, p. 352 (ECF No. 38-3)), and against "Tim Helder and his entire department," (Ex. A-2, at p. 465 (ECF No. 38-3)). As the Court understands it, Plaintiff's argument is that his references to "[Tim Helder's] deputies" and "[Tim Helder's] entire department" should be construed as encompassing every officer – at any rank – acting under then-Sheriff Tim Helder. The undersigned is not persuaded. Such a liberal construction of Plaintiff's submissions not only leads to an absurd result in suggesting that *every* member of the sheriff's department – regardless of rank or duty assignment – is responsible for the alleged violations of Plaintiff's constitutional

rights, but, more importantly, is inconsistent with § 1983 individual liability. *See Mayorga v. Missouri*, 442 F.3d 1128, 1133 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)).

On April 12, 2022, Plaintiff filed a grievance "against McLeland, Bilbrey, Self, Rhodes, Corley, Drumright, Dersam, *as well as their supervisors* for being subjected to ISO-4 which has no ventilation, no working HVAC, is musty and moldy and is swarming with flies nesting and hatching eggs in the detritus built up in the expansion joint in the floor. . .." (Ex. A-2, p. 444 (ECF No. 38-3)) (emphasis added).[7]   Plaintiff does not specifically identify the supervisors' names. And neither party offers any facts to suggest (or dispute) that any of the remaining defendants were (or were not) "McLeland, Bilbrey, Self, Rhodes, Corley, Drumright, [and] Dersam['s]" supervisors at the time.   Similarly, Plaintiff's kiosk submissions make multiple references to the failure of the "night shift" to properly clean his cell or provide him with any cleaning supplies, but there are no facts establishing which (if any) of the remaining defendants served on the "night shift." (Ex. A-2, pp. 462, 463, 469, 515 (ECF No. 38-3)).   In any event, the WCDC grievance procedure requires inmates to identify the persons involved by "name." *See* (ECF No. 38-5).   The grievance procedure does not stipulate that identifying such persons by position or some other description is

---

[7] Claims against Dfc. T. McLeland, Dfc. Bilbrey, Cpl. C. Self, Dfc. J. Rhodes, Dfc. Drumright, and Dfc. Dersam were previously dismissed without prejudice at screening pursuant to 28 U.S.C. § 1915A because, in part, there were no allegations that these defendants *caused* the allegedly unconstitutional conditions of confinement or that they were supervisors who failed to take any appropriate corrective action upon notice of those conditions. (Report & Recommendation (ECF No. 17), *adopted by* (ECF No. 25)); *see also Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (supervisors may be liable under § 1983 when corrective inaction constitutes deliberate indifference toward violation).

sufficient. *Id.*

Further, with respect to claims against these defendants, Plaintiff has failed to establish any material fact dispute that WCDC's grievance procedure was "unavailable" to him.  *See Ross v. Blake*, 578 U.S. 632, 641 (2016) ("[U]nder § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate that is, must exhaust available remedies, but need not exhaust unavailable ones.").  As noted above, "[a]n administrative remedy is 'not capable of use,' and therefore unavailable, for example, 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)).  To the extent that Plaintiff intended for this grievance to also be against then-Sheriff Elect Jay Cantrell or Major Denzer, Plaintiff has failed to provide any reason why he failed to comply with the WCDC grievance procedure by failing to specifically identify these defendants by name.  To the extent that the names of any other supervisors were unknown to Plaintiff, there is nothing in the record indicating that Plaintiff tried to ascertain the identities of the supervisors in question but was prevented from doing so. *See Tope v. Fabian*, Case No. 09-cv-0734 (DWF/RLE), 2010 WL 3307351 at * 11 (D. Minn. July 29, 2010) (citing *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000) ("A grievance procedure that requires a prisoner to provide information [such as the name of an aggressor] he does not have **and cannot reasonably obtain** is not a remedy that is 'available' to the prisoner") (emphasis in the original)), *report and recommendation adopted by* 2010 WL 3307354 (D. Minn. Aug. 19, 2010).[8]

---

[8] If Plaintiff had timely requested this information, but met resistance from WCDC staff, the Court's analysis on whether the grievance procedure was "available" to Plaintiff may very well have come out differently.

Finally, although the record includes Plaintiff's grievances specifically naming Defendants Sgt. Pineda, Sgt. Byrd, Lt. M. Arnold, Captain Ake, Major Denzer, and then-Sheriff Elect Jay Cantrell, these submissions do not satisfy the WCDC's grievance procedure in other respects as to the claims *in this action*.   Plaintiff filed a submission against Defendant Jay Cantrell on March 15, 2022, *see* (Ex. A-2, p. 378 (ECF No. 38-3)), which provides:

> This grievance is against Chief Deputy Jay Cantrell for failing to address my grievances after making him aware via 3 letters over the past several weeks. The guards continue to violate Covid policy, many of the staff continue to retaliate against me for exposing their defiance and unofficial customs of violating detainees' rights, exposing them to unsafe and unhealthy living conditions, and for his allowing the jail staff to continue to subject me to cruel and unusual punishment, most recently denying me medical attention after I've notified them that I feel like I have Covid again, which I'd like to mention is most likely the result of the staff's refusal to abide by policy.
> *Id.*

Nevertheless, it is undisputed that the grievances contained within this submission – WCDC staff's purported failure to follow COVID protocols and failure to provide proper medical treatment – are not the subject of Plaintiff's claims in *this* action.   Similarly, although Plaintiff also grieves the general conditions of his confinement and retaliation by WCDC, those grievances are not specific to the conditions of his confinement or the basis of his confinement in segregation from March 1, 2022, to March 5, 2022, and they predate his confinement from March 29, 2022, to May 24, 2022.

Second, Plaintiff filed a submission on November 30, 2022, saying, in part:

> This grievance is against Cpl. Caudle, Sgt. Pineda, Sgt. Byrd, Lt. M. Arnold, Captain Ake, Major Denzer and Sheriff Elect Jay Cantrell. Let this serve as final exhaustion of the grievance process prior to filing a lawsuit. I have been reporting for a year on the filth of the jail and the staff's refusal to provide a clean, safe, and healthy environment through daily practices of sanitation and hygiene.

(Ex. A-2, p. 1029 (ECF No. 38-3)).

This submission, however, was filed approximately *six months* after the factual predicate of this complaint. Accordingly, even though the submission grieved the conditions of his confinement and specifically identified the names of the persons involved, to the extent that Plaintiff intended for this grievance to address the conditions of his confinement while he was housed in ISO-4 from March 29, 2022, to May 29, 2022, this grievance does not satisfy the WCDC's grievance procedure.

In short, and without a doubt, Plaintiff filed numerous kiosk submissions while detained at the WCDC. The law is not, however, concerned with quantity of grievances but whether those submissions satisfied the available WCDC grievance procedure. For the reasons outlined above, the Court finds it undisputed that Plaintiff's kiosk submissions did not satisfy WCDC's grievance procedures and exhaust administrative remedies with respect to Defendants (then) Chief Deputy Jay Cantrell, Maj. R. Denzer, Cpt. N. Ake, Cpt. K. East, Lt. M. Arnold, Lt. A. Arnold, Sgt. Pineda, Sgt. Workman, Sgt. Bzoski, Sgt. Fuller, Sgt. Byrd, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Dpt. E. Tate, Sgt. Lunsford, and Sgt. S. Caudle and accordingly, the Motion of these Defendants should be **granted.**

## CONCLUSION

For the reasons outlined above, **IT IS RECOMMENDED THAT:**

(1)     Defendants' Motion for Partial Summary Judgment for Plaintiff's failure to first exhaust his administrative remedies with respect to Plaintiff's claims against Chief Deputy J. Cantrell, Maj. R. Denzer, Cpt. N. Ake, Cpt. K. East, Lt. M. Arnold, Lt. A. Arnold, Sgt. Pineda, Sgt. Workman, Sgt. Bzoski, Sgt. Fuller, Sgt. Byrd, Cpl. B. Velasco, Cpl. M. Smith, Cpl. G. Ochieng, Dpt. E. Tate, Sgt. Lunsford, and Sgt. S. Caudle be **GRANTED;**

28

(2)     Defendants' Motion for Partial Summary Judgment for Plaintiff's failure to first exhaust his administrative remedies as to Defendant Cpl. Tom Mulvaney be **DENIED;**

(3)     Discovery should commence on Plaintiff's claims against Lt. Carrier, Sgt. Allen, Sgt. Malone, Cpl. Corley, and Cpl. T. Mulvaney pursuant to an initial scheduling order that will be entered separately; and

(4)     Service efforts should continue on Defendant Sgt. Bradshaw.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**RECOMMENDED** this 28th day of August 2023.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

29